STUART G. GROSS (SB#251019)
sgross@gross-law.com
**GROSS LAW**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA
94111

*Counsel for Plaintiff and
Proposed Class*



## E-filing

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

**KEVIN MARILLEY**, on behalf of himself and similarly situated,

        **Plaintiff,**

    v.

**JONH McCAMMAN**, in his personal and official capacity; **Kevin Hunting,** in his personal and official capacity; **Donald Koch,** in his personal and official capacity; **Jim Kellogg,** in his personal and official capacity; **Richard B. Rogers,** in his personal and official capacity; **Michael Sutton**, in his personal and official capacity; **Daniel W. Richards,** in his personal and official capacity; and **Jack Baylis**, in his personal and official capacity,

        **Defendants.**

Case No.

**CV 11 2418**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

DMR

Plaintiff Kevin Marilley on behalf of himself and other similarly situated non-resident California commercial fishermen, alleges as follows on information and belief, except where based on personal knowledge:

## I. INTRODUCTION

1.     This action challenges the unconstitutional discrimination suffered by Plaintiff and similarly situated non-resident California commercial fishermen in the fees charged by the California Department of Fish & Game ("DFG") for certain types of commercial fishing licenses, registrations, and permits.  As detailed below, Plaintiff and similarly situated non-resident commercial fishermen are charged fees for such licenses, registrations, and permits ("Non-Resident Fees") that are as much as more than *3.75 times higher* than fees charged for the same licenses, permits and registrations to resident commercial fishermen ("Resident Fees").

2.     The table below describes the extreme differences between the annual Resident and Non-Resident Fees charged by the DFG for the years 2009, 2010 and 2011:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| Commercial Fishing License – **Resident** | $ 119.75 | $120.75 | $122.75 |
| Commercial Fishing License – **Non-Resident** | $358.75 | $361.75 | $367.75 |
| Commercial Fishing Boat Registration – **Resident** | $314.25 | 317.00 | $322.25 |
| Commercial Fishing Boat Registration – **Non-Resident** | $943.50 | $951.50 | $967.50 |
| Dungeness Crab Vessel Permit – **Resident** | $251.75 | $254.00 | $285.25 |
| Dungeness Crab Vessel Permit – **Non-Resident** | $503.25 | $507.50 | $516.00 |
| Herring Gill Net Permit – **Resident** | $333.25 | $336.00 | $341.75 |
| Herring Gill Net Permit – **Non-Resident** | $1,258.25 | $1,269.00 | $1290.25 |

1

2        3.      Many non-resident California commercial fishermen, in fact, are required to pay

3    not just one, but several of the above Non-Resident Fees each year.  As discussed herein, a

4    Commercial Fishing License is required of any person that fishes in California, with one narrow

5    exception, and a Commercial Fishing Vessel Registration is required of the owner or operator of

6    any vessel used for the commercial harvest or transport of fish in California.  Thus, a non-

7    resident who comes with his vessel from out of state to commercially fish in California would

8    have to pay both the Non-Resident Fee for a Commercial Fishing License and the Non-Resident

9    Fee for a Commercial Fishing Vessel Registration each year, which in 2011 would total

10   $1,335.25.  If the same person was a California resident, on the other hand, the total for such a

11   license and registration would be only $464.50.

12       4.      If such a person was a non-resident commercial herring fisherman the difference

13   between that amount and the amount that resident commercial herring fishermen would be

14   required to pay is even more dramatic.  As a result of certain regulations governing the

15   commercial herring fishery, many commercial herring harvesters carry multiple Herring Gill Net

16   Permits.  It is not unusual for a commercial herring fisherman, as a result, to have three or more

17   herring permits. If such a person is a non-resident and boat owner or operator, he or she would

18   pay not only $1,335.25 for his or her Commercial Fishing License and Commercial Fishing

19   Vessel Registration in 2011, he or she would also pay another $3,870.75 for his or her three

20   permits, totaling $5,206.00.  If his or her address happened to be Oakland, California instead of

21   Bellingham, Washington, his or her total would be only $1,489.75.  Thus, solely because such a

22   person happens to be a Washington resident, in 2011, he or she would be charged ***$3,716.25***

23   ***more*** than he would if he was a California resident.

24       5.      Charging Plaintiff and other non-resident California commercial fishermen these

25   Non-Resident Fees, which are many times the Resident Fees charged for the same licenses,

26   permits, and registrations to commercial fishermen who are California residents, violates clearly

27

28

1
2    established constitutional prohibitions against discriminating in commercial regulations between
3    the residents of a State and non residents.

4         6.     Nonetheless, under the color of various provisions of California State law,
5    Defendants John McCamman ("McCamman"), current Director of DFG and former Chief
6    Deputy Director of the DFG, Kevin Hunting ("Hunting"), current Chief Deputy Director of the
7    DFG, Donald Koch ("Koch"), former director of the DFG, Jim Kellogg ("Kellogg"), current and
8    long-time president of the California Fish & Game Commission ("FGC"), Richard B. Rogers
9    ("Rogers"), former member of the FGC, Michael Sutton ("Sutton"), current member of the FGC,
10   Daniel W. Richards, current member of the FGC, and Jack Baylis ("Baylis"), current member of
11   the FGC, (collectively "Defendants"), have, through their actions and omissions, caused the
12   complained of discriminatory Non-Resident Fees to not only remain in place but have, in fact,
13   caused the discriminatory Non-Resident Fees charged each year to increase, thereby increasing
14   each year the discrimination between resident and non-resident California commercial
15   fishermen.  Moreover, Defendants McCamman, Hunting and Koch have enforced the provisions
16   requiring Plaintiff and similarly situated non-resident California commercial fishermen to pay
17   these discriminatory Non-Resident Fees.

18        7.     In doing so, Defendants have subjected Plaintiff and similarly situated non-
19   resident California commercial fishermen, or caused Plaintiff and similarly situated non-resident
20   California commercial fishermen to be subjected to deprivations of: (a) the privileges and
21   immunities guaranteed to Class members under Article 4, Section 2, Clause 1 of the U.S.
22   Constitution; (b) the rights of Plaintiff and similarly situated non-resident California commercial
23   fishermen to be free of discrimination prohibited by the Dormant Commerce Clause of Article 1,
24   Section 8 of the U.S. Constitution; and (c) the rights of Plaintiff and similarly situated non-
25   resident California commercial fishermen to equal protection of the laws under the Fourteenth
26   Amendment of the U.S. Constitution.

27        8.     Accordingly, Plaintiff, on behalf of himself and similarly situated non-resident
28   California commercial fishermen, bring suit against all of the Defendants, in the Defendants'

1

2  personal capacities, under 42 U.S.C. §§ 1983, for damages suffered by Plaintiff and similarly

3  situated non-resident California commercial fishermen as a result of Defendants' wrongful

4  conduct alleged herein, pre-judgment and post-judgment interest thereon, the cost of the suit and

5  reasonable attorneys' fees, as prayed for herein.

6      9.   Plaintiff, on behalf of himself and similarly situated non-resident California

7  commercial fishermen, also bring suit against Defendants McCamman, Hunting, Kellogg,

8  Rogers, Sutton, Richards and Baylis, in their official capacities, under 42 U.S.C. § 1983, 28

9  U.S.C. §§ 2201 and 2202, and Federal Rule of Procedure 57, for the declaratory, preliminary,

10  and permanent injunctive relief, the cost of the suit and reasonable attorneys' fees, as prayed or

11  herein.

12  ## II. JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

13      10.   This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

14      11.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the

15  Defendants reside in California and several reside in this District.

16      12.   Intradistrict assignment to the San Francisco Division is proper on Civil Local

17  Rule 3-2(c) because a substantial portion of the events and/or omissions occurred in San

18  Francisco County, in that the Plaintiff and a substantial number of the Class members are non-

19  resident San Francisco Bay commercial herring fishermen who are charged the discriminatory

20  fees complained of herein.

21      13.   As residents of the State of California, Defendants, and each of them, have

22  sufficient minimum contacts within California to make the exercise of jurisdiction over each

23  Defendant by California courts consistent with traditional notions of fair play and substantial

24  justice.

## III. PARTIES

25  A.   **Plaintiff**

26

27      14.   Plaintiff Kevin Marilley of Bellingham, WA has been a commercial fisherman for

28  over thirty-five years and for over twenty years has been, and continues to be, a San Francisco

1

2   Bay commercial herring fisherman.  During the entire period that Mr. Marilley has been a San

3   Francisco Bay commercial herring fisherman, Mr. Marilley has been a resident of Washington

4   State.  As a result, Mr. Marilley has been forced to pay discriminatory and illegal Non-Resident

5   Fees for commercial fishing permits, licenses and registrations complained of herein.  Moreover,

6   Mr. Marilley remains a San Francisco commercial herring fisherman and intends to continue

7   being a San Francisco commercial herring fishermen in the future; thus, without the injunctive

8   relief prayed for herein, Mr. Marilley will continue to be forced to pay the discriminatory and

9   illegal Non-Resident Fees complained of herein.

10  **B.    Defendants**

11       **1.    Fish & Game Department Officials**

12       15.    Defendant John McCamman ("McCamman") of Sacramento, CA is the Director

13  of the DFG.  Defendant McCamman was named acting Director of the DFG in or around

14  November of 2009 and was appointed to the position of Director of the DFG in or around

15  January of 2010.  From or around April of 2006 until or around January of 2010, McCamman

16  was Chief Deputy Director of DFG.  During his tenure as Chief Deputy Director of the DFG,

17  McCamman also served as acting Director of DFG from or around 2007 until or around 2008.

18  Prior to join DFG, McCamman was a senior vice president for the lobbying firm, Fleishman-

19  Hillard Government Relations, from or around 2003 until or around 2006.  McCamman was

20  chief of staff for U.S. Congressman George Radanovich from or around1994 until or around

21  2003. Prior to that, he was county administrative officer for Shasta County from or around 1992

22  until or around 1994 and Mariposa County from or around1987 until or around 1992.

23       16.    As Director of the DFG, Defendant McCamman had during the Class Period, and

24  currently has, the authority to administer and enforce policies and provisions of the California

25  Fish and Game Code and associated regulations and to administer the DFG. *See Wildlife Alive v.*

26  *Chickering*, 18 Cal. 3d 190, 205 (1976)(citing §§ 700-703)(unless otherwise specified, all

27  statutory references used herein refer to the California Fish & Game Code).  Mr. McCamman

28  exercised this authority, continues to exercise this authority by enforcing provisions of the Fish

and Game Code that establish the Non-Resident Fees complained of herein. Mr. McCamman further exercised this authority, and continues to exercise this authority, by exercising and/or failing to exercise his authority under various provisions of the Fish and Game Code to adjust Non-Resident Fees, as alleged herein.

17.     As Chief Deputy Director of the DFG, Defendant McCamman had the authority to enforce provisions of the Fish and Game Code. § 815. Defendant McCamman exercised this authority through enforcement and administration of the Fish and Game code provisions establishing the Non-Resident Fees complained of herein. As Chief Deputy Director, McCamman administered the Administrative Division of the DFG, through which collection of the Non-Resident Fees complained of herein were collected As Chief Deputy Director of the DFG, Defendant McCamman was responsible for the enforcement of those provisions and enforced these provision during the Class Period

18.     In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant McCamman subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein. Defendant McCamman is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

19.     Defendant Kevin Hunting ("Hunting") of Orangevale, CA is the Chief Deputy Director of the DFG. Mr. Hunting was appointed Chief Deputy Director of the DFG on or around January of 2010. Mr. Hunting has been continuously employed by the DFG in various positions since approximately 1994.

20.     As Chief Deputy Director of the DFG, Defendant Hunting had the authority, and currently has the authority to administer and enforce provisions of the Fish and Game Code including provisions establishing the Non-Resident Fees complained of herein. § 815. Defendant Hunting has exercised this authority and continues to exercise this authority through enforcement and administration of the Fish and Game code provisions establishing the Non-Resident Fees complained of herein. As Chief Deputy Director, Hunting administered the

Administrative Division of the DFG, through which collection of the Non-Resident Fees complained of herein were collected.  As Chief Deputy Director of the DFG, Defendant Hunting was responsible for the enforcement of those provisions and enforced these provision during the Class Period.

21.    In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant Hunting subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein.  Defendant Hunting is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

22.    Defendant Donald Koch ("Koch") of Redding, CA was the Director of the DFG from or around April of 2008 until or around October of 2009.  From or around 1981 until or around 2007, Mr. Koch was continuously employed by the DFG in various positions.

23.    As Director of the DFG, Defendant Koch had during the Class Period the authority to administer and enforce policies and provisions of the California Fish and Game Code and associated regulations and to administer the DFG.  *See Wildlife Alive v. Chickering*, 18 Cal. 3d 190, 205 (1976)(citing §§ 700-703).  Koch exercised this authority by enforcing provisions of the Fish and Game Code that establish the Non-Resident Fees complained of herein.  Koch further exercised this authority by exercising and/or failing to exercise his authority under various provisions of the Fish and Game Code to adjust Non-Resident Fees, as alleged herein.

24.    In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant Koch subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein.  Defendant Koch is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

25.    Defendants McCamman, Hunting and Koch are collectively referred to herein as "DFG Defendants."

1
2

**2.     Fish & Game Commission Members**

3      26.     Defendant Jim Kellogg ("Kellogg") of Discovery Bay, CA is the President of the

4   California Fish and Game Commission ("FGC").  Kellogg has been a member of the FGC since

5   January 31, 2002. His current term on the FGC expires on January 15, 2012.  As a member

6

7   and/or president of the FGC Mr. Kellogg has the authority, and had the authority during the

8   Class Period, to adjust the Non-Resident fees charged to Class members for commercial herring

9   gill net permits, as set forth herein.

10      27.     In exercising these and other authorities granted to him and described herein and

11   acting under the color of law, Defendant Kellogg subjected Class members or caused Class

12   members to be subjected to the deprivation of their rights as alleged herein.  Defendant Kellogg

13   is sued in his personal capacity for damages, as prayed for below, and in his official capacity for

14   injunctive relief, as prayed for below.

15      28.     Defendant Richard B. Rogers ("Rogers") of Montecito, CA, was a member of the

16   FGC from January 18, 2005 until January 15, 2011. As a member of the FGC Mr. Rogers had the

17   authority during the Class Period to adjust the Non-Resident fees charged to Class members for

18   commercial herring gill net permits, as set forth herein.

19      29.     In exercising these and other authorities granted to him and described herein and

20   acting under the color of law, Defendant Rogers subjected Class members or caused Class

21   members to be subjected to the deprivation of their rights as alleged herein.  Defendant Rogers is

22   sued in his personal capacity for damages, as prayed for below, and in his official capacity for

23   injunctive relief, as prayed for below.

24      30.     Defendant Michael Sutton ("Sutton") of Monterey, CA is a member of the FGC.

25   Mr. Sutton was appointed to the FGC on May 4, 2007, and his term on the FGC expires January

26   15, 2015. As a member of the FGC Mr. Sutton has the authority, and had the authority during the

27   Class Period, to adjust the Non-Resident fees charged to Class members for commercial herring

28   gill net permits, as set forth herein.

31. In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant Sutton subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein. Defendant Sutton is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

32. Defendant Daniel W. Richards ("Richards") of Upland, CA is a member of the FGC. Mr. Richards was appointed to the FGC on February 14, 2008. Mr. Richards' term on the FGC expires January 15, 2013. As a member of the FGC, Mr. Richards has the authority, and had the authority during the Class Period, to adjust the Non-Resident fees charged to Class members for commercial herring gill net permits, as set forth herein.

33. In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant Sutton subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein. Defendant Sutton is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

34. Defendant Jack Baylis ("Baylis") of Los Angeles, CA is a member of the FGC. Mr. Baylis was appointed to the FGC on September 29, 2010. Mr. Baylis' term on the FGC expires January 15, 2016. As a member of the FGC, Mr. Baylis has the authority, and had the authority during the Class Period, to adjust the Non-Resident fees charged to Class members for commercial herring gill net permits, as set forth herein.

35. In exercising these and other authorities granted to him and described herein and acting under the color of law, Defendant Baylis subjected Class members or caused Class members to be subjected to the deprivation of their rights as alleged herein. Defendant Baylis is sued in his personal capacity for damages, as prayed for below, and in his official capacity for injunctive relief, as prayed for below.

36. Defendants Kellogg, Rogers, Sutton, Richards and Baylis are collectively referred to here as "FGC Defendants."

1  **C.     Agency, Employment And Joint Venture**

2       37.     At all relevant times, each of the Defendants was an agent, employee, servant,

3  partner, alter ego, and/or joint venturer of each of his co-Defendants in the acts and omissions

4  that have caused the injuries to Plaintiff and the Class as alleged herein, and was at all times,

5  acting within the course and scope of said agency, employment, service, partnership, conspiracy,

6  alter ego status, and/or joint venture.

7                    **IV. CLASS ACTION ALLEGATIONS**

8       38.     Plaintiffs bring this action on behalf of himself and all other similarly situated

9  persons (collectively with Plaintiff, "Class") pursuant to Federal Rules of Civil Procedure 23(a)

10  and 23(b)(3) [check].  The Class is defined as follows:

11          All individuals who, during a the period beginning on May 18, 2009 through
            present ("Class Period"), purchased or renewed a California commercial fishing
12          license, permit, or registration, and was required to pay a non-resident fee in
            connection with such purchase or renewal.
13

14       39.     Plaintiff does not know the exact size of the Class, and believe such information

15  to be in the exclusive control of the Defendants. However, according to public DFG records, in

16  2010, DFG issued 654 non-resident Commercial Fishing Licenses, 290 non-resident Commercial

17  Fishing Vessel Registrations, 74 non-resident Dungeness Crab Vessel Permits, and 36 non-

18  resident Herring Gill Net Permits. Accordingly Plaintiff believes that the Class includes several

19  hundred individuals and is so numerous and geographically dispersed throughout the United

20  States as to render joinder of all Class members impracticable.

21       40.     There are questions of law or fact common to the Class, including but not limited

22  to the following

23       a.     Whether California Fish & Game Code §§ 7852, 7881, 8280.6, 8550 violate the

24  United States Constitution;

25       b.     Whether Defendants took actions, and made omissions, in violation of the rights

26  and privileges guaranteed to Class members under the United States Constitution and 42 U.S.C.

27  § 1983;

28

1

2      c.      Whether Plaintiff and the other Class members were injured by Defendants'

3  conduct, and, if so, the appropriate class-wide measure of damages for Class members; and,

4      d.      Whether Plaintiff and the Class are entitled to injunctive relief.

5      41.     These and other questions of law and fact are common to the Class and

6  predominate over any questions affecting only individual Class members.

7      42.     Plaintiff's claims are typical of the claims of the Class because Plaintiff, during

8  the Class Period, has paid Non-Resident Fees for various types of licenses, permits, and

9  registrations.

10     43.     Plaintiff will fairly and adequately represent the interests of the Class in that

11  Plaintiff is a non-resident California commercial fishermen and have no conflict with any other

12  members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in

13  natural resource and class action litigation.

14     44.     The prosecution of separate actions by individual Class members would create the

15  risk of inconsistent or varying adjudications.

16     45.     Defendants have acted, and refused to act, on grounds generally applicable to the

17  Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

18     46.     This class action is superior to the alternatives, if any, for fair and efficient

19  adjudication of this controversy. Prosecution as a class action will eliminate the possibility of

20  repetitious litigation.

21                              **V. FACTUAL ALLEGATIONS**

22     47.     As detailed herein, Defendants have set discriminatory Non-Resident Fees, failed

23  to correct discriminatory Non-Resident Fees, and/or enforced provisions setting discriminatory

24  Non-Resident, which were, and are, as much as more than ***3.75 times higher*** than the Resident

25  Fees charged for:  (A) Commercial Fishing Licenses; (B) Commercial Fishing Vessel

26  Registrations; (C) Dungeness Crab Vessel Permits; and (D) Herring Gill Net Permits.

27     48.     Section 70 defines "resident" as "any person who has resided continuously in the

28  State of California for six months or more immediately prior to the date of his application for a

license or permit, any person on active military duty with the Armed Forces of the United States or auxiliary branch thereof, or any person enrolled in the Job Corps established pursuant to Section 2883 of Title 29 of the United States Code."

49. Based only on the fact that they do not meet this definition for "resident," Plaintiff and the Class have been charged these discriminatory fees in violation of their rights, privileges and immunities guaranteed under the Constitution.

**A. Defendants Have Caused, And Threaten To Cause, Plaintiff And The Class To Pay Discriminatory Non-Resident Fees For Commercial Fishing Licenses That Are Approximately _Three Times_ More Than Resident Fees**

50. With the exception of persons selling live freshwater bait, all persons over the age of 16 who are engaged in the commercial harvesting of fish in the state of California are required to hold a Commercial Fishing License issued by the DFG.  §7850.

51. Section 7852 set the Resident Fee for a Commercial Fishing License, for the year 2004, at $95 and the Non-Resident Fee $285, and provides for the fees to be adjust each year after according to the provisions of Section 713.

52. Section 713 gives the DFG, through the Director of the DFG, which during the Class Period was and is Defendant McCamman or was Defendant Koch, the authority to annually adjust the fees charged by the DFG for licenses, stamps, permits, tags, or other entitlements issued by the DFG, a practice referred to as "indexing."

53. During the Class Period, Defendant McCamman or Defendant Koch, depending on the year, exercised this authority and acting under the color of law, raised the Non-Resident Fee for Commercial Fishing Licenses purchased by Class members from $337.75 in 2008, to $358.75 in 2009, to $361.75 in 2010, to $367.75 in 2011.

54. During the same period, Defendant McCamman or Defendant Koch, depending on the year, raised the Resident Fee for Commercial Fishing Licenses only as follows: from $112.75 in 2008 to $119.75 in 2009, to $120.75 in 2010, to $ 122.75 in 2011.

55. Thus, as a direct result of the affirmative actions of Defendants McCamman and Koch, the amount by which Class members were discriminated in terms of the fees charged to

1

2 them as opposed to California resident commercial fishermen for Commercial Fishing Licenses

3 increased from: $225 in 2008, to $239 in 2009, to $241 in 2010, to $245 in 2011.

4     56.    Section 713 further requires the DFG, through the Director of the DFG, which

5 during the Class Period was, and is, Defendant McCamman or was Defendant Koch, to analyze

6 all fees for licenses, stamps, permits, tags, and other entitlements issued by it, at least every five

7 years, to ensure the appropriate fee amounts are charged and, where appropriate, recommend to

8 the California Legislature or the CFG that fees established by the CFG or the Legislature be

9 adjusted to ensure that those fees are appropriate.

10     57.    During the Class Period, Defendants McCamman or Defendant Koch, depending

11 on the year, acting under the color of law also failed to fulfill their duties under Section 713 to

12 ensure that the appropriate fees were charged for Commercial Fishing Licenses. Specifically,

13 Defendants McCamman or Defendant Koch, depending on the year, acting under the color of

14 law failed to adjust the fees charged for Commercial Fishing Licenses so that Class members

15 were not charged discriminatory fees for Commercial Fishing Licenses that were approximately

16 ***three times*** the fee charged to California resident commercial fishermen.

17     58.    Furthermore, during the Class Period the DFG Defendants, acting under the color

18 of law, enforced and administered the provisions under which Plaintiff were required to pay

19 these discriminatory Non-Resident Fees for Commercial Fishing Licenses that were and are

20 approximately ***three times*** the Resident Fee for a Commercial Fishing License.

21     59.    Accordingly, each year during the Class Period, the DFG Defendants, caused,

22 took actions to cause, or failed to take actions which caused, Class members to be deprived of

23 their rights, privileges and immunities under the Article 4, Section 2, Clause 1 of the U.S.

24 Constitution, the Dormant Commerce Clause of Article 1, Section 8 of the U.S. Constitution, and

25 the equal protection clause of Fourteenth Amendment of the U.S. Constitution, and Defendants

26 threaten to take the same actions and make the same omissions if not enjoined from doing so in

27 the matter prayed for herein.

28

COMPLAINT

**B.**   **Defendants Have Caused, And Threaten To Cause, Class members To Pay**
**Discriminatory Non-Resident Fees For Commercial Fishing Vessel Registrations**
**Approximately *Three Times* More Than Resident Fees**

60.    Section 7881 provides: "Every person who owns or operates a vessel in public waters in connection with fishing operations for profit in this state, or who brings fish into this state, or who, for profit, permits persons to fish therefrom, shall submit an application for commercial boat registration on forms provided by the department and shall be issued a registration number."

61.    Section 7881 further set, for the 2004 license year, the Resident Fee for Commercial Fishing Vessel Registration at $250 and the Non-Resident Fee at $750, and provides for the fees to be adjust each year after according to the provision of Section 713.

62.    Accordingly, even when a commercial fishing vessel is docked year around in California and/or has a California homeport registration, if the vessel is owned by a non-resident, the owner is charged the Non-Resident Fee for the Commercial Fishing Vessel Registration.

63.    Section 713 gives the DFG, through the Director of the DFG, which during the Class Period was and is Defendant McCamman or was Defendant Koch, the authority to annually adjust the fees charged by the DFG for licenses, stamps, permits, tags, or other entitlements issued by the DFG, a practice referred to as "indexing."

64.    During the Class Period, Defendant McCamman or Defendant Koch, depending on the year, exercised this authority and acting under the color of law, raised the Non-Resident Fee for Commercial Fishing Vessel Registration Licenses purchased by Class members from in $888.50 in 2008, to $943.50 in 2009, to $951.50 in 2010, to $967.50 in 2011.

65.    During the same period, Defendant McCamman or Defendant Koch, depending on the year, raised the Resident Fee for Commercial Fishing Vessel Registrations only as follows: from $296.00 in 2008, to $314.25 in 2009, to $317.00 in 2010, to $322.25 in 2011.

66.    Thus, as a direct result of the affirmative actions of Defendants McCamman and Koch, the amount by which Class members were discriminated in terms of the fees charged to them as opposed to California resident commercial fishermen for Commercial Fishing Vessel

1

2 Registrations increased from: $592.50 in 2008, to $629.25 in 2009, to $634.50 in 2010, to

3 $645.25 in 2011.

4          67.     Section 713 further requires the DFG, through the Director of the DFG, which

5 during the Class Period was, and is, Defendant McCamman or was Defendant Koch, to analyze,

6 at least every five years, all fees for licenses, stamps, permits, tags, and other entitlements issued

7 by it to ensure the appropriate fee amount is charged and, where appropriate, recommend to the

8 California Legislature or the CFG that fees established by the CFG or the Legislature be adjusted

9 to ensure that those fees are appropriate.

10          68.     During the Class Period, Defendants McCamman or Defendant Koch, depending

11 on the year, acting under the color of law also failed to fulfill their duties under Section 713 to

12 ensure that the appropriate fees were charged for Commercial Fishing Vessel Registrations.

13 Specifically, Defendants McCamman or Defendant Koch, depending on the year, acting under

14 the color of law failed to adjust the fees charged for Commercial Fishing Vessel Registrations so

15 that Class members were not charged discriminatory fees for Commercial Fishing Vessel

16 Registration that were approximately ***three times*** the fee charged to California resident

17 commercial fishermen.

18          69.     Furthermore, ensuring the Class Period the DFG Defendants, acting under the

19 color of law, administered and enforced the provisions under which Plaintiff were required to

20 pay these Non-Resident Fees for Commercial Fishing Vessel Registration that were and are

21 approximately ***three times*** the Resident Fee for a Commercial Fishing Vessel Registration.

22          70.     Accordingly, each year during the Class Period, the DFG Defendants, caused,

23 took actions to cause, or failed to take actions which caused, Class members to be deprived of

24 their rights, privileges and immunities under the Article 4, Section 2, Clause 1 of the U.S.

25 Constitution, the Dormant Commerce Clause of Article 1, Section 8 of the U.S. Constitution, and

26 the equal protection clause of Fourteenth Amendment of the U.S. Constitution, and Defendants

27 threaten to take the same actions and make the same omissions if not enjoined from doing so in

28 the matter prayed for herein.

**C.    Defendants Have Caused, And Threaten To Cause, Class members To Pay Discriminatory Non-Resident Fees For Dungeness Crab Vessel Permits Approximately *Two Times* More Than Resident Fees**

71.    Section 8280.1 provides that "[n]o person shall use a vessel to take, possess, or land Dungeness crab for commercial purposes using Dungeness crab traps authorized pursuant to Section 9011, unless the owner of that vessel has a Dungeness crab vessel permit for that vessel that has not been suspended or revoked."

72.    Section 8280.6 set the Resident Fee for a Dungeness Crab Vessel Permit at $200 and the Non-Resident Fee at $400, levels at which the fees remained from 1995 until 2005.

73.    In 2005, the Director of the DFG began raising the fees pursuant to the power granted to the Director of the DFG under Section 713.

74.    Section 713 gives the DFG, through the Director of the DFG, which during the Class Period was and is Defendant McCamman or Defendant Koch, the authority to annually adjust the fees charged by the DFG for licenses, stamps, permits, tags, or other entitlements issued by the DFG, , a practice referred to as "indexing."

75.    During the Class Period, Defendant McCamman or Defendant Koch, depending on the year, exercised this authority and acting under the color of law, raised the Non-Resident Fee for the Dungeness Crab Vessel Permits purchased by Class members from in $474.00 in 2008, to $503.25 in 2009, to $507.50 in 2010, to $516.00 in 2011.

76.    During the same period, Defendant McCamman or Defendant Koch, depending on the year, raised the Resident Fee for Dungeness Crab Vessel Permits only as follows: from $237.00 in 2008, to $251.75 in 2009, to $254.00 in 2010, to $258.25 in 2011.

77.    Thus, as a direct result of the affirmative actions of Defendants McCamman and Koch, the amount by which Class members were discriminated in terms of the fees charged to them as opposed to California resident commercial fishermen for Dungeness Crab Vessel Permits increased from: $237 in 2008, to $251.50 in 2009, to $253.50 in 2010, to $257.75 in 2011.

78.    Section 713 further requires the DFG, through the Director of the DFG, which during the Class Period was, and is, Defendant McCamman or Defendant Koch, to analyze, at least every five years, all fees for licenses, stamps, permits, tags, and other entitlements issued by it to ensure the appropriate fee amount is charged and, where appropriate, recommend to the

1

2  California Legislature or the CFG that fees established by the CFG or the Legislature be adjusted

3  to ensure that those fees are appropriate.

4          79.     During the Class Period, Defendants McCamman or Defendant Koch, depending

5  on the year, acting under the color of law also failed to fulfill their duties under Section 713 to

6  ensure that the appropriate fees were charged for Dungeness Crab Vessel Permits.  Specifically,

7  Defendants McCamman or Defendant Koch, depending on the year, acting under the color of

8  law failed to adjust the fees charged for Dungeness Crab Vessel Permits so that Class members

9  were not charged discriminatory fees for Dungeness Crab Vessel Permits that were and are

10  approximately *twice* the fee charged to California resident commercial fishermen.

11          80.     Furthermore, during the Class Period the DFG Defendants, acting under the color

12  of law, administered and enforced the provisions under which Class members were required to

13  pay these Non-Resident Fees for Dungeness Crab Vessel Permits that were and are

14  approximately *twice* the Resident Fee for a Dungeness Crab Vessel Permit.

15          81.     Accordingly, each year during the Class Period, the DFG Defendants, caused,

16  took actions to cause, or failed to take actions which caused, Class members to be deprived of

17  their rights, privileges and immunities under the Article 4, Section 2, Clause 1 of the U.S.

18  Constitution, the Dormant Commerce Clause of Article 1, Section 8 of the U.S. Constitution, and

19  the equal protection clause of Fourteenth Amendment of the U.S. Constitution, and Defendants

20  threaten to take the same actions and make the same omissions if not enjoined from doing so in

21  the matter prayed for herein.

22  **D.      Defendants Have Caused, And Threaten To Cause, Class Members To Pay**
    **Discriminatory Non-Resident Fees For Herring Gill Net Permits More Than *3.75***
23  ***Times* More Than Resident Fees**

24          82.     Section 8550 provides that "[h]erring may be taken for commercial purposes only

25  under a permit, subject to regulations adopted by the commission."

26          83.     In 1990, the California Legislature enacted Section 8550.5, which set the Resident

27  Fee for a Herring Gill Net Permit at $200 and the Non-Resident Fee at $300.

28

84.     In 1992, the California Legislature amended Section 8550.5, increasing the Resident Fee for a Herring Gill Net Permit to $265 and the Non-Resident Fee to $1,000.

85.     Section 713 gives the DFG, through the Director of the DFG, which during the Class Period was and is Defendant McCamman or was Defendant Koch, the authority to annually adjust the fees charged by the DFG for licenses, stamps, permits, tags, or other entitlements issued by the DFG., a practice referred to as "indexing."

86.     During the Class Period, Defendant McCamman or Defendant Koch, depending on the year, exercised this authority and acting under the color of law, raised the Non-Resident Fee for the Herring Gill Net Permits purchased by Class members from $1,184.75 in 2008, to $1,258.25 in 2009, to $1,269.00 in 2010, to $1,290.25 in 2011.

87.     During the same period, Defendant McCamman or Defendant Koch, depending on the year, raised the Resident Fee for Herring Gill Net Permit only as follows: from $313.75 in 2008, to $333.25 in 2009, to $336.00 in 2010, to $341.75 in 2011.

88.     Thus, as a direct result of the affirmative actions of Defendants McCamman and Koch, the amount by which Class members were discriminated in terms of the fees charged to them as opposed to California resident commercial fishermen increased from $871 in 2008, to $925 in 2009, to $933 in 2010, to $948.50 in 2010.

89.     The increasing Non-Resident Fees charged for Herring Gill Net Permits has forced many non-resident California commercial fishermen to give up their Herring Gill Net Permits because of the increasing expense of maintaining them.  Thus, between 2002 and 2010, the number of Herring Gill Net Permits issued to non-residents decreased from 118 to 36, a 70% reduction.  During the same period, the number of Herring Gill Net Permits issued to residents decreased from 329 to 178 a reduction of only 46%.

90.     Section 713 further requires the DFG, through the Director of the DFG, which during the Class Period was, and is, Defendant McCamman or Defendant Koch, to analyze, at least every five years, all fees for licenses, stamps, permits, tags, and other entitlements issued by it to ensure the appropriate fee amount is charged and, where appropriate, recommend to the

1

2  California Legislature or the CFG that fees established by the CFG or the Legislature be adjusted

3  to ensure that those fees are appropriate.

4          91.     Section 8555 requires the director of the DFG to "periodically meet and confer

5  with representatives of the commercial herring roe fishery to review regulations and policies of

6  the commission and the department concerning that fishery and to receive recommendations on

7  the regulation and management of that fishery."

8          92.     Section 8552.1 which is titled "Adjustment of Fees" provides that "[t]he [CFG],

9  in consultation with the [DFG] and representatives of the commercial roe herring fishery, and

10  after holding at least one public hearing, may adjust the fees charged for permits; including fees

11  for the issuance or transfer of permits, to a level that will not discourage the transfer of permits

12  or limit entry into the fishery, and that will ensure sufficient funds to cover reasonable

13  department costs associated with the management of the fishery, including research and

14  enforcement costs."

15          93.     Several times, Class members and other representatives of the commercial roe

16  herring fishery have protested to the CFG and/or DFG regarding the discriminatory Non-

17  Resident Fees charged for Herring Gill Net Permits and requested that this discrimination be

18  remedied.  These protests included detailed written submissions detailing the clearly established

19  law that prohibits states from charging higher fees for commercial licenses and permits to non-

20  residents than are charged to residents, and discussed cases in other states where such

21  commercial fishing license, permit and/or registration fees were found to be unconstitutional.

22          94.     These submissions included but were not limited to a four-page detailed

23  submission made on April 14, 2003 by the Washington attorney and commercial fisherman,

24  William Honea, which contained detailed discussions of applicable case law, under which

25  similar practices had been found unconstitutional.  This submission was sent to the Executive

26  Director of the FGC, of which Defendant Kellogg was a member at the time, the Director of the

27  DFG and other DFG personnel.  The letter was submitted again to the FGC on another occasion

28  several years later by a member of the Class.

95.     During the Class Period, Defendants McCamman or Defendant Koch, depending on the year, acting under the color of law also failed to fulfill their duties under Sections 713 to ensure that the appropriate fees were charged for Herring Gill Net Permits.  Specifically, Defendants McCamman or Defendant Koch, depending on the year, acting under the color of law failed to adjust the fees charged for Herring Gill Net Permits so that Class members were not charged discriminatory fees for Herring Gill Net Permits that were and are more than ***3.75 times*** the fee charged to California resident commercial fishermen.

96.     During the Class Period, the CGF Defendants, acting under the color of law also failed to fulfill their duties under Section 8552.1 to ensure that appropriate fees were charged for Herring Gill Net Permits. Specifically, the CGF Defendants acting under the color of law failed to adjust the fees charged for Herring Gill Net Permits so that Class members were not charged discriminatory fees for Herring Gill Net Permits that were and are more than ***3.75 times*** the fee charged to California resident commercial fishermen.

97.     Furthermore, during the Class Period the DFG Defendants, acting under the color of law, administered and enforced the provisions under which Class members were required to pay these Non-Resident Fees for Herring Gill Net Permits that were and are more than ***3.75 times*** the Resident Fee for a Herring Gill Net Permit.

98.     Accordingly, each year during the Class Period, the Defendants, caused, took actions to cause, or failed to take actions which caused Class members to be deprived of their rights, privileges and immunities under the Article 4, Section 2, Clause 1 of the U.S. Constitution, the Dormant Commerce Clause of Article 1, Section 8 of the U.S. Constitution, and the equal protection clause of Fourteenth Amendment of the U.S. Constitution, and Defendants threaten to take the same actions and make the same omissions if not enjoined from doing so in the matter prayed for herein.

## VI.    COUNT I
**(VIOLATION OF DORMANT COMMERCE CLAUSE OF ART. I OF THE U.S. CONSTITUTION AND 42 U.S.C. § 1983)**

99.     Plaintiff incorporate by references the foregoing paragraphs as if fully set forth herein

100.    The dormant or negative commerce clause of Article 1, Section 8, Clause 3 prohibits discrimination against interstate commerce.

101.    It is clearly established law that the regulation of access to natural resources that places a differential burden on out-of-state access to natural resources is subject to dormant Commerce Clause scrutiny.  Regulation of commercial fishing, in particular, has long been established as subject to dormant Commerce Clause scrutiny.

102.    Regulations of access to natural resources based on the residency of the natural resource user is subject to strict scrutiny and can only be upheld if narrowly tailored to meet serve the legitimate interests of the State.

103.    The Non-Resident Fees charged to Class members are facially discriminatory, having both the purpose and effect of requiring Class members to pay as much as more than 3.75 times more than California resident commercial fishermen for certain types of licenses, registrations, and permits that are required in order to gain access to certain California natural resources, based solely on the Class members' status as non-California residents.  The Non-Resident Fees are therefore *per se* invalid, and Defendants cannot justify them as the only means by which a legitimate local interest can be advanced.

104.    As discussed herein the Non-Resident Fees complained of are as follows:

a.    The Non-Resident Fee for a Commercial Fishing License, which is required for any person over 16 who engages in commercial fishing in the State of California, except for live bait, is approximately **three times higher** than the Resident Fee for the same license.

b.    The Non-Resident Fee for a Commercial Fishing Vessel Registration, which is required of any person that owns or operates a commercial fishing vessel in the State of California is approximately **three times higher** than the Resident Fee for the same registration.

1

2    c.    The Non-Resident Fee for a <u>Dungeness Crab Vessel Permit</u>, which is required for

3    any vessel engaged in any commercial Dungeness crab fishing activity in the State of California

4    is approximately **two times higher** than the Resident Fee for the same permit.

5    d.    The Non-Resident Fee for a <u>Herring Gill Net Permit</u>, which is required for any

6    person engaged in commercial herring gill net fishing in the State of California is over **3.75**

7    **times higher** than the Resident Fee for the same permit.

8    105.    Class members have been harmed by these discriminatory Non-Resident fees by

9    being required to pay far more for access to certain California natural resources than are other

10   commercial fishermen, based solely on their state of residence, in violation of Class members'

11   rights under the dormant Commerce Clause.

12   106.    Defendants McCamman and Koch have caused Class members to be subjected to

13   these harms through the exercise by these Defendants of the authority granted to them under

14   various provisions of California State law to adjust the amounts charged for the licenses, permits,

15   and registrations complained of herein, which Defendants have exercised each year to raise the

16   Non-Resident Fees charged to Class members.

17   107.    Defendants McCamman and Koch have also caused Class members to be

18   subjected to these harms by their failures to fulfill their duties under California State law to

19   recommend to the CGF or the California legislature that these Non-Resident Fees be adjusted to

20   eliminate the discrimination between Class members and commercial fishermen who are

21   California residents.

22   108.    Defendants McCamman, Koch and Hunting have also caused Class members to

23   be subjected to these harms by enforcing provisions of California law that require Class members

24   to pay the discriminatory Non-Resident Fees.

25   109.    The CFG Defendants have caused Class members to be subjected to these harms

26   caused by the discriminatory Non-Resident Fees charged for Herring Gill Net Permits by failing

27   to fulfill their duties under California State adjust the Non-Resident Fees charged for Herring

28

1

2    Gill Net Permits to eliminate the discrimination between Class members and commercial

3    fishermen who are California residents.

4            110.    As a direct and proximate result of these acts and omissions by Defendants taken

5    and made, under the color of law in violation of Plaintiff' and Class members' rights under the

6    dormant Commerce Clause of the United States Constitution, Article 1, Section 8, Clause 3, and

7    42 U.S.C. § 1983, Class members have sustained ascertainable damages proveable at trial and

8    will suffer further damages unless Defendants' conduct is not enjoined in the matter sought

9    herein.

10                              **VII.    COUNT II**
                 **(VIOLATION OF PRIVILEGES & IMMUNITIES CLAUSE OF ART. IV OF THE**
11                        **U.S. CONSTITUTION AND 42 U.S.C. § 1983)**

12           111.    Plaintiff incorporate by references the foregoing paragraphs as if fully set forth

13   herein.

14           112.    The Privileges and Immunities Clause of the Article IV of the United States

15   Constitution provides: "The Citizens of each State shall be entitled to all Privileges and

16   Immunities of Citizens in the several States."

17           113.    One of the privileges granted by the Clause is the right to a non-resident to engage

18   in a commercial activity on equal terms as those on which a resident is entitled to engage in the

19   commercial activity.

20           114.    It has long been clearly established law that commercial fishing, in particular, is

21   sufficiently basic to the livelihood of the nation as to fall within the purview of the Privileges and

22   Immunities Clause.

23           115.    As alleged herein, Defendants, under the color of law, have through their acts and

24   omissions caused Class members to be deprived of their privileges to engage in certain types of

25   commercial fishing in the State of California on equal terms as California residents.

26           116.    Specifically, these acts and omissions have caused Class members to pay

27   approximately **3 times** as much for Commercial Fishing Licenses and Commercial Fishing

28

1

2   Vessel Registrations, **2 times** as much for Dungeness Crab Vessel Permits, and more than **3.75**

3   **times** as much for Herring Gill Net Permits, as California resident commercial fishermen are

4   required to pay.

5       117.    These disparities in treatment between Class members and California resident

6   commercial fishermen are not closely related to the advancement of any substantial California

7   state interest.

8       118.    Class members do not constitute any particular source of evil at which

9   Defendants' actions and omissions are aimed.

10      119.    Accordingly, Defendants' actions and omission as alleged herein have subjected

11  Class members or caused Class members to be deprived of the privileges to which they are

12  guaranteed, in violation of Article IV of the U.S. Constitution and 42 U.S.C. § 1983, and Class

13  members have sustained ascertainable damages proveable at trial as a result, and will suffer

14  further damages unless Defendants' conduct is not enjoined in the matter sought herein.

15

16                          **VIII.   COUNT III**
    **(VIOLATION OF EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT**
17              **OF THE U.S. CONSTITUTION AND 42 U.S.C. § 1983)**

18      120.    Plaintiff incorporate by references the foregoing paragraphs as if fully set forth

19  herein.

20      121.    Section 1 of the Fourteenth Amendment of the U.S. Constitution forbids a State

21  and its officials from "deny[ing] to any person within its jurisdiction the equal protection of the

22  law."

23      122.    As alleged herein, Defendants, under the color of law, have through their acts and

24  omissions denied Class members equal protection of the law as it relates to fees charged by the

25  State of California as a precondition of the right to engage in commercial fishing in the State of

26  California.

27      123.    Specifically, these acts and omissions have caused Class members to pay

28  approximately **3 times** as much for Commercial Fishing Licenses and Commercial Fishing

1

2　Vessel Registrations, **2 times** as much for Dungeness Crab Vessel Permits, and more than 3.**75**

3　**times** as much for Herring Gill Net Permits, as California resident commercial fishermen are

4　required to pay.

5　　　124.　The purpose and effect of these actions and omissions is to discriminate against

6　non-resident commercial fishermen, including Class members, in favor of domestic commercial

7　fishermen.

8　　　125.　It has long been clearly established law that such a purpose has long been

9　recognized as illegitimate, and thus an improper and unconstitutional basis for differential

10　treatment under the law.

11　　　126.　Accordingly, Defendants' actions and omission as alleged herein have subjected

12　Class members or caused Class members to be deprived of the privileges to which they are

13　guaranteed, in violation of Article IV of the U.S. Constitution and 42 U.S.C. § 1983, and Class

14　members have sustained ascertainable damages proveable at trial as a result, and will suffer

15　further damages unless Defendants' conduct is not enjoined in the matter sought herein.

16　　　　　　　　　　　　**IX.　PRAYER FOR RELIEF**

17

18　　　WHEREFORE, Plaintiff pray that the Court enter judgment on its behalf and on behalf of

19　the Class herein, adjudging and decreeing that:

20　　　A.　This action may proceed as a class action, with Plaintiff as the designated Class

21　representatives and their counsel as Class Counsel.

22　　　B.　California Fish & Game Code §§ 7852, 7881, 8280.6, 8550 violate the United

23　States Constitution and are null and void;

24　　　C.　Defendants McCamman and Hunting, in their official capacities, are preliminarily

25　and permanently enjoined and restrained from enforcing California Fish & Game Code §§ 7852,

26　7881, 8280.6, 8550 or any other provision of law under which non-resident California

27　commercial fishermen are required to pay more for any type of license, permit or registration

28　than California resident commercial fishermen are required to pay;

D.     Defendant McCamman, in his official capacity, is preliminarily and permanently enjoined and restrained from raising any amount charged to non-resident California commercial fishermen for any type of license, permit or registration, if the amount charged to non-resident California commercial fishermen for such a license, permit or registration is or would be greater than that charged to resident California commercial fishermen;

E.     Defendant McCamman, in his official capacity, is preliminarily and permanently enjoined to fulfill his duties under California Fish & Game Code §§ 713 to recommend to the California Fish & Game Commission and California Legislature an adjustment of the fees charged to non-resident California commercial fishermen for above complained of licenses, permits, and registrations, such that those fees are not more than that charged to resident California commercial fishermen;

F.     Defendants Kellogg, Rogers, Sutton, Richards and Baylis, in their official capacities, are preliminarily and permanently enjoined to fulfill their duties under California Fish & Game Code § 8552.1 to adjust the fees charged to non-resident California fishermen for herring gill net permits such that those fees are not more than that charged to resident California commercial fishermen;

G.     Plaintiff and the members of the Class shall recover damages sustained by them as a result of the acts and omissions of Defendants alleged herein, including compensatory and punitive damages, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants, in their individual capacities;

H.     Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

I.     Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

//

//

1

2       K.      Plaintiff and members of the Class receive such other or further relief as may be

3  just and proper.

4

5  DATED:  May 18, 2011                            **GROSS LAW**

6

7                                       Stuart G. Gross (SBN 251019)

8                                       **GROSS LAW**
The Embarcadero

9                                     Pier 9, Suite 100
San Francisco, CA 941111

10

11                                  *Counsel for Plaintiff and
Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2        K.       Plaintiff and members of the Class receive such other or further relief as may be

3   just and proper.

4

5   DATED:  May 18, 2011                                    **GROSS LAW**

6

7                                                           Stuart G. Gross (SBN 251019)

8                                                           **GROSS LAW**
                                                            The Embarcadero
9                                                           Pier 9, Suite 100
                                                            San Francisco, CA 941111

10

11                                                          *Counsel for Plaintiff and*
                                                            *Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28