United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10
11   KEVIN MARILLEY, and SALVATORE              No. C-11-02418 DMR
     PAPETTI, on behalf of themselves and
12   similarly situated,                        **ORDER GRANTING IN PART AND**
                                                **DENYING IN PART DEFENDANTS'**
13            Plaintiffs,                        **MOTION TO DISMISS**
14        v.
15   JOHN McCAMMAN, *et al*.,
16            Defendants.
17
     _____/
18
19        Defendants John McCamman, Donald Koch, Jim Kellogg, Richard B. Rogers, Michael

20   Sutton, Daniel W. Richards, and Jack Baylis move the court pursuant to Federal Rules of Civil

21   Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs Kevin Marilley and Salvatore Papetti's First

22   Amended Complaint ("FAC") in part for lack of subject matter jurisdiction and for failing to state a

23   claim upon which relief can be granted.  The court conducted a hearing on November 3, 2011,

24   during which the parties were given an opportunity to present oral argument.  For the reasons below,

25   Defendants' motion is granted in part and denied in part.

26                              **I. BACKGROUND**

27        California charges nonresidents higher fees than residents for commercial fishing licenses,

28

1   registrations, and permits.  *See* Cal. Fish & Game Code §§ 7881 (commercial fishing vessel

2   registrations), 7852 (commercial fishing licenses), 8550.5 (gill net permits), 8280.1 (Dungeness crab

3   vessel permits).  The 2011 differential fees include:

4       • Commercial fishing licenses:    $122.75 (residents); $367.75 (non-residents)

5       • Vessel registration:    $322.25 (residents); $967.50 (non-residents)

6       • Gill net permits:    $341.75 (residents); $1,290.25 (non-residents)

7       • Dungeness crab vessels:    $258.25 (residents); $516.00 (non-residents)

8   (FAC ¶ 2.)

9         On May 18, 2011, Plaintiff Kevin Marilley filed a complaint against Defendants in their

10  individual and official capacities, challenging the constitutionality of California's differential fees

11  under the dormant Commerce Clause, the Privileges and Immunities Clause, the Equal Protection

12  Clause, and 42 U.S.C. § 1983.  (Compl. 21-25.)  Plaintiff alleged that the Department of Fish and

13  Game ("DFG") Director John McCamman, Chief Deputy Director Kevin Hunting, and former

14  Director Donald Koch ("DFG Defendants") exercised or failed to exercise their authority to adjust

15  the allegedly discriminatory nonresident commercial fishing fees.  (Compl. ¶¶ 15-24.)  Plaintiffs

16  similarly alleged that California Fish and Game Commission members Jim Kellogg, Richard B.

17  Rogers, Michael Sutton, Daniel W. Richards, and Jack Baylis ("Commission Defendants") violated

18  their rights by failing to adjust the allegedly discriminatory herring permit fees.  (Compl. ¶¶ 26-36.)

19  Plaintiffs sought declaratory relief, injunctive relief, and compensatory and punitive damages.

20  (Compl. 25-26.)

21        On August 22, 2011, Defendants moved to dismiss the following claims pursuant to Rules

22  12(b)(1) and 12(b)(6): (1) Plaintiff's challenge to California's nonresident fee for Dungeness crab

23  vessel permits; (2) claims for monetary damages against all Defendants; (3) claims for declaratory

24  relief against all Defendants; (4) claims for injunctive relief against all Defendants except the current

25  Director of DFG; and (5) the Dormant Commerce Clause cause of action.  [Docket No. 16.]

26        On September 27, 2011, while Defendants' motion was pending, Plaintiffs filed the FAC

27  adding Salvatore Papetti as a lead plaintiff and alleging additional facts as to Plaintiffs' standing to

28  challenge the Dungeness crab vessel permit fees.  Plaintiffs subsequently filed their opposition to

**United States District Court**
For the Northern District of California

1  Defendants' motion in which they voluntarily dismissed their Dormant Commerce Clause claim.

2  (Pls.' Opp. 1.)  On October 4, 2011, Plaintiffs voluntarily dismissed all claims against Chief Deputy

3  Director Hunting.  [Docket No. 40.]  Because Plaintiffs' opposition was filed subsequent to the FAC

4  and Defendants' reply addressed the FAC, the court will evaluate Defendants' motion as it applies to

5  Plaintiffs' FAC.

6  ## II.  LEGAL STANDARD

7  ### A.      Federal Rule of Civil Procedure 12(b)(6)

8          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

9  the complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When

10  reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the

11  factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

12  curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory

13  or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New*

14  *Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks

15  omitted).  When a complaint presents a cognizable legal theory, the court may grant the motion if

16  the complaint lacks "sufficient factual matter to state a facially plausible claim to relief."  *Id.* (citing

17  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  A claim has facial plausibility when a plaintiff

18  "pleads factual content that allows the court to draw the reasonable inference that the defendant is

19  liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

20          The issue on a motion to dismiss for failure to state a claim is not whether the claimant will

21  ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims

22  asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted).

23  When evaluating such a motion, the court must accept all material allegations in the complaint as

24  true, even if doubtful, and construe them in the light most favorable to the non-moving party.  *Cahill*

25  *v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  "[C]onclusory allegations of law and

26  unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state

27  a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

28  ### B.      Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be either a facial or a factual attack on jurisdiction. A facial attack asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction. A factual attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When standing is factually attacked in a Rule 12(b)(1) motion, the court may hear evidence before ruling on the issue. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## III. DISCUSSION

### A. Plaintiffs' Article III Standing to Pursue Claims Regarding the Dungeness Crab Vessel Permit Fees

Defendants move to dismiss Plaintiffs' claims regarding the Dungeness crab vessel permit fees under Federal Rule of Civil Procedure 12(b)(1) on the ground that both named plaintiffs lack standing to pursue these claims. In their motion, Defendants raised a facial jurisdictional attack under Rule 12(b)(1) regarding Plaintiff Marilley's standing to pursue claims related to Dungeness crab vessel permit fees, and a factual jurisdictional attack regarding Plaintiff Papetti's standing to pursue the same claims, challenging the allegation that Papetti has paid non-resident fees for Dungeness crab vessel permits in the past and intends to do so in the future. *See Safe Air for Everyone*, 373 F.3d at 1039.

On October 25, 2011, the court ordered Plaintiffs to file supplemental briefing regarding Plaintiff Papetti's standing to pursue these claims. On October 31, 2011, Plaintiffs submitted the requested supplemental briefing, in which Plaintiffs represented that Salvatore Papetti's son, Savior Papetti, with whom Salvatore has held and paid for crab vessel permits, has agreed to act as a named plaintiff in this putative class action. (Gross Decl. ¶ 5, Oct. 31, 2011.) According to Plaintiffs' counsel, Savior Papetti has "commercially harvested Dungeness crab in California every year but one, each year since at least 2006, including in 2011, . . . has paid some or all of the nonresident fee required to renew the crab permit he holds with his father, and he intends to commercially fish Dungeness crab in California this year and for many years into the future." (Gross Decl. ¶ 6.)

On November 2, 2011, prior to the hearing on the present motion, the parties submitted a stipulation and proposed order seeking leave for Plaintiffs to file a second amended complaint adding Savior Papetti as a named plaintiff [Docket No. 44]. At the hearing on this motion, without waiving their right to object following the filing of the second amended complaint, Defendants agreed that the facts set forth in Plaintiffs' supplemental briefing regarding Savior Papetti appear to show that he has standing to bring claims related to the Dungeness crab vessel permits. Therefore, the court grants Plaintiffs' request for leave to file a second amended complaint adding Savior Papetti as a named plaintiff and denies without prejudice Defendants' motion to dismiss Plaintiffs' claims regarding the Dungeness crab vessel permit fees.

**B.      Plaintiffs' Claims for Damages Against Defendants in their Personal Capacity**

Next, Defendants seek dismissal of Plaintiffs' damages claims against them in their personal capacities for alleged violations of the Privileges and Immunities Clause and the Equal Protection Clause on the grounds that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense shields "all but the plainly incompetent or those who knowingly violate the law," meaning that defendants can have a reasonable, but mistaken belief about the facts or about what the law requires in any given situation and still be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law.") (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)). "[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In determining whether an official is entitled to qualified immunity, courts conduct a two-prong inquiry. For the first prong, a court considers whether the facts alleged, construed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. For

United States District Court
For the Northern District of California

5

the second prong, a court considers whether the right at issue was "clearly established" at the time of the official's alleged misconduct, in light of the specific context of the case. *Saucier*, 533 U.S. at 201. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. Courts may consider the two prongs in either order. *Id*. at 236. If either question is answered in the negative, the defendant is immune from liability for damages. *Id*. "[A]lthough the first *Saucier* prong calls for a factual inquiry, the second prong of the *Saucier* analysis is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (internal citation omitted). Thus, courts have the discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding whether any constitutional right has been violated. *Dunn*, 621 F.3d at 1199 (quoting *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

To determine whether a right was "clearly established," the court must turn to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the court should look to available decisions of other circuits and district courts to ascertain whether the law was clearly established. *Id*. For the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary that the injured party establish that the defendant's "behavior had been previously declared unconstitutional." *Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009) (internal quotation marks omitted). The relevant inquiry is whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation he or she confronted. *Saucier*, 533 U.S. at 202; *Rodis*, 545 F.3d at 969.

### 1. *Dittman/Grossman* Rule

Defendants first argue that they are entitled to qualified immunity pursuant to the Ninth Circuit's "*Dittman/Grossman*" rule because they acted in reliance on a statute in collecting differential licensing and permitting fees. (Defs.' Mot. 14-18.) Under the *Dittman/Grossman* rule, an official is ordinarily entitled to qualified immunity when he or she "act[ed] in reliance on a duly

United States District Court

For the Northern District of California

1    enacted statute or ordinance." *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994);

2    *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999).  "[T]he existence of a statute

3    authorizing particular conduct is a factor that supports the conclusion that a reasonable official

4    would find that conduct constitutional."  *Grossman*, 33 F.3d at 1209.  This is because officials are

5    "ordinarily entitled to rely on the assumption that the [legislature] has considered the views of legal

6    counsel and concluded that the [regulation or policy] is a valid and constitutional exercise of

7    authority."  *Id*.  However, reliance upon a statute, regulation, or official policy does not render the

8    officer's conduct *per se* reasonable.  *Dittman*, 191 F.3d at 1027.  Qualified immunity will not be

9    granted to a public official who enforces a statute, regulation, or policy that is "patently violative of

10   fundamental constitutional principles."  *Grossman*, 33 F.3d at 1209.

11        Plaintiffs argue that the *Dittman/Grossman* rule does not apply here because Defendants

12   "each played a primary role in setting the Nonresident Commercial Fishing Fees."  (Pls.' Opp'n 22.)

13   Plaintiffs analogize the facts in this case to the facts of *Community House, Inc. v. City of Boise,*

14   *Idaho*, 623 F.3d 945, 965 (9th Cir. 2010).  In that case, the plaintiff filed a section 1983 action

15   against a city and a number of individual city officials for allegedly violating the Due Process

16   Clause, Establishment Clause, and federal Fair Housing Act by leasing and then selling a city-owned

17   building to a religious organization that operated the facility as a homeless shelter for single men

18   and included in its activities Christian religious services and pre-meal prayers.  *Id.* at 951.  The

19   Ninth Circuit reversed the lower court's denial of summary judgment, concluding that the individual

20   defendants were entitled to the defenses of legislative and qualified immunity.  *Id.* at 973.

21        The *Community House* defendants argued that the *Dittman/Grossman* rule applied to them

22   because they were "unmistakably acting in furtherance of decisions made by the City Council."  *Id.*

23   at 965 (internal quotation marks omitted.)  However, the plaintiff disputed this characterization of

24   defendants' role, arguing instead that they had played a "primary role" in the alleged "wrongful

25   conduct and in developing the plan and advising the Council."  *Id.*

26        Given that the parties "hotly dispute[d]" the specific roles played in the matter by the

27   defendants, as well as the requirement that the court "accept the facts and reasonable inferences in

28   the light most favorable to" the plaintiff given the case's procedural posture, the Ninth Circuit

United States District Court

For the Northern District of California

1  hesitated to apply the *Dittman/Grossman* rule.  *Id.*  Instead, the court examined the issue according

2  to the second prong of the qualified immunity analysis, and concluded the defendants were entitled

3  to qualified immunity because the rights allegedly violated were not clearly established at the

4  relevant times.  *Id.* at 971-72.

5       In contrast to *Community House*, Plaintiffs do not allege that Defendants played any role in

6  the enactment of the challenged statutes.[1]  Instead, Plaintiffs urge this court to extend the Ninth

7  Circuit's reasoning in *Community House* to find that the *Dittman/Grossman* rule does not apply

8  where, as here, Defendants are alleged to have played a role in adjusting differential fees subsequent

9  to the adoption of statutes which originally set those fees.  However, with respect to the Commission

10  Defendants, Plaintiffs fail to allege sufficient facts in the FAC to support their assertion that they

11  played a "primary role" in setting the challenged nonresident commercial fishing fees subsequent to

12  their original adoption.  In the FAC, Plaintiffs allege that the Commission Defendants "failed to

13  fulfill their duties under [Fish and Game Code] Section 8552.1 to ensure that appropriate fees were

14  charged for Herring Gill Net Permits."  (FAC ¶ 97.)  Section 8552.1 provides in relevant part:

15       The commission, in consultation with the department and
        representatives of the commercial roe herring fishery, and after
16       holding at least one public hearing, *may adjust the fees* charged for
        permits; . . . to a level that will not discourage the transfer of permits
17       or limit entry into the fishery, and that will ensure sufficient funds to
        cover reasonable department costs associated with the management
18       of the fishery, including research and enforcement costs.

19  Cal. Fish & Game Code § 8552.1 (emphasis added).  Thus, the plain language of the statute grants

20  the Commission Defendants some discretion to adjust the differential fees, but does not impose an

21  affirmative duty to do so.  In addition, the statute closely circumscribes the discretion granted to the

22  Commission Defendants.  The Commission cannot act alone, and must consult with the DFG and a

23  particular segment of the fishing industry, as well as allow for public input.  Moreover, the

24  Commission "may adjust fees" only "to a level that will not . . . limit entry into the fishery, and will

25  ensure sufficient funds . . . associated with the management of the fishery."  *Id.*  Because the

26  Commission is only given limited discretion to adjust fees, and not an affirmative mandate to do so, it

27

28

---

[1]  Indeed, Plaintiffs cannot make such an allegation, given that the statutes at issue were adopted at different points in time, well before any of the Defendants held positions of authority with either DFG or the Commission.  *See* FAC at ¶¶ 16, 23, 27, 29, 31, 33, 35 (employment dates of Defendants); FAC at ¶¶ 52, 62, 73, 85 (dates when fees were established).

cannot be said that the individual Commission Defendants had the kind of authority that amounts to a "primary role" in setting the nonresident commercial fishing fees for purposes of the *Community House* exception to qualified immunity. Instead, according to the language of section 8552.1, it appears that the Commission Defendants merely acted in furtherance of the statutory scheme adopted by the Legislature, essentially playing a passive role in the alleged wrongful conduct in "act[ing] in reliance on a duly enacted statute." *Grossman*, 33 F.3d at 1209. Accordingly, Plaintiffs' *Community House* analogy fails with respect to the Commission Defendants, and they are entitled to qualified immunity.

As to the DFG Defendants, Plaintiffs similarly allege that they "failed to fulfill their duties under [Fish and Game Code] Section 713 to ensure that the appropriate fees were charged" for the nonresident commercial fishing licenses, registrations, and permits. (FAC ¶¶ 58, 69, 80, 96.) Section 713 provides in relevant part:

> The department *shall*, at least every five years, *analyze all fees* for . . . permits . . . issued by it to ensure the appropriate fee amount is charged. Where appropriate, the department *shall recommend* to the Legislature or the commission that fees established by the commission or the Legislature be adjusted to ensure that those fees are appropriate.

Cal. Fish & Game Code § 713(f) (emphasis added). Under this statute, the DFG Defendants have an affirmative duty to "analyze" the differential fees every five years and to "recommend" adjustments when appropriate. Plaintiffs allege that the DFG Defendants failed to exercise that authority, leaving in place the allegedly unconstitutional differential fees.

Given the affirmative duty granted to the DFG Defendants to analyze the fees and recommend adjustments on a regular basis, it is a closer question as to whether the DFG Defendants played a "primary role" in setting the nonresident commercial fishing fees following their original adoption. Accordingly, accepting Plaintiffs' allegations as true, coupled with the statutory language of section 713, the court will not apply the *Dittman/Grossman* rule as to the DFG Defendants. Instead, the court will examine the issue of qualified immunity according to whether the rights allegedly violated were clearly established at the time of Defendants' alleged misconduct.

United States District Court
For the Northern District of California

2.      **Whether the Rights at Issue Were "Clearly Established"**

a.      **The Privileges and Immunities Clause**

Courts have recognized the validity of a discriminatory countervailing fee structure as legitimate under the Privileges and Immunities Clause, as long as the higher fees do not overcompensate the state for the provided subsidies or burdens. *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 284 n.17 (1985); *Mullaney v. Anderson*, 342 U.S. 415, 417 (1952); *Toomer v. Witsell*, 334 U.S. 385, 398-99 (1948). Plaintiffs argue that Defendants are not shielded by qualified immunity because at the time of enforcement, they had no reasonable basis to believe that the extra amounts charged to nonresidents were based on a credible method of allocation. (Pls.' Opp'n 18.) However, cases have discussed different potential methodologies for determining whether a fee differential is constitutionally valid. As the court pointed out in its October 3, 2011 Order Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 37], it remains to be determined what methodology is appropriate in this case for assessing the extent to which California may recoup its fishery conservation and management expenditures from nonresident commercial fishermen. What is clear is that any analysis of the differential fee structure will be fact-intensive. Because differential fee structures require fact-intensive analysis, the contours of a credible method of allocating costs between residents and nonresidents cannot be said to be clearly established.[2] *See Anderson*, 483 U.S. at 640 (for the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Accordingly, Defendants did not violate clearly established law under the Privileges and Immunities Clause when they collected differential out-of-state licensing and permitting fees. Therefore, all Defendants are

---

[2] As Defendants note, California has differentiated between residents and nonresidents with respect to some of these fees since at least 1990. In other words, the statutes at issue have been enforced without court challenge for twenty years. (Defs.' Mot. 16.) Further, a number of states with commercial fishing activities charge nonresidents more than residents for permits and licenses. These factors weigh significantly on the side of the reasonableness of a belief in the validity of the fee structure at issue. *See Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (qualified immunity is appropriate when a defendant shows that "no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law.") (citation omitted).

1   entitled to qualified immunity as to Plaintiffs' Privileges and Immunities claims against them in their

2   personal capacities.  Defendants' motion to dismiss Plaintiffs' damages claims pursuant to the

3   Privileges and Immunities clause against all Defendants is granted.

4                              **b.      Equal Protection Clause**

5          As to Plaintiffs' Equal Protection claim, Plaintiffs again argue that Defendants are not

6   shielded by qualified immunity because they could not objectively believe that charging nonresidents

7   thousands of dollars more than California residents could be the product of any credible method of

8   allocating costs between residents and nonresidents.  (Pls.' Opp'n 19.)  This argument fails for the

9   same reason that Plaintiffs' argument regarding the Privileges and Immunities clause fails.  As

10  previously stated, the contours of a credible method of allocating costs between residents and

11  nonresidents cannot be said to have been clearly established at the time of enforcement.  In addition,

12  as this case does not involve a suspect class (*see Baldwin v. Fish & Game Comm'n of Mont.*, 436

13  U.S. 371, 389 (1978)) or a fundamental right, the challenged classification is presumed constitutional

14  so long as the classification is rationally related to a legitimate governmental purpose.  *City of*

15  *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).  Courts have routinely held that states

16  have a legitimate interest in offsetting subsidies to nonresidents, which Defendants claim California's

17  differential fees aim to accomplish.  *See Baldwin*, 436 U.S. at 391; *Barber v. State of Haw.*, 42 F.3d

18  1185, 1196 (9th Cir. 1994); *Haw. Boating Ass'n v. Water Transp. Facilities Div., Dep't of Transp.,*

19  *State of Haw.*, 651 F.2d 661, 666 (9th Cir. 1981).  Accordingly, the court cannot say that Defendants

20  violated clearly established law under the Equal Protection Clause.  Defendants are therefore entitled

21  to qualified immunity as to Plaintiffs' Equal Protection claims against them in their personal

22  capacities.  Defendants' motion to dismiss Plaintiffs' damages claims pursuant to the Equal

23  Protection clause against all Defendants is granted.

24         Because the court has determined that in light of the specific context of this case, Plaintiffs'

25  rights under the Privileges and Immunities and Equal Protection Clauses were not clearly established

26

27

28

United States District Court

For the Northern District of California

1    at the time of Defendants' alleged misconduct, the court need not address *Saucier*'s first prong,

2    whether the facts as alleged show that Defendants violated Plaintiffs' constitutional rights.[3]

3    **C.    Plaintiffs' Claims for Declaratory Relief**

4        Next, Defendants seek to dismiss Plaintiffs' claim for declaratory relief, in the form of a

5    declaration that the statutory provisions at issue violate the constitution and are null and void.  In

6    their motion, Defendants argue that such a declaration implicates the past and the future validity of

7    the provisions, in that Plaintiffs are seeking in part a declaration that they and the class members were

8    overcharged for commercial fishing permits.[4]  (Defs.' Mot. 18.)  In their opposition and at the hearing

9    on this motion, Plaintiffs clarified that they do not seek any *retroactive* declaratory relief.  In

10   response, Defendants argue that such relief would serve no purpose that would not otherwise be

11   served by the injunction Plaintiffs also seek.

12       The award of declaratory relief under 28 U.S.C. § 2201 is discretionary.  *Solenoid Devices,*

13   *Inc. v. Ledex, Inc.*, 375 F.2d 444, 445 (9th Cir. 1967).  Where the relief sought in a declaratory relief

14   claim is duplicative of relief sought in another claim or defense, courts may exercise their discretion

15   to dismiss the claim as unnecessary.  *See Englewood Lending Inc. v. G & G Coachella Invs., LLC*,

16   651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009); *Brady v. Conseco, Inc.*, No. 08-05746, 2009 WL

17   2356201, at *7 (N.D. Cal. July 29, 2009) ("[A] court may decline to hear a claim for declaratory

18   relief if adjudication of the issues raised in other claims would fully and adequately determine all

19   matters actually in controversy between the parties.") (citing *Philips Med. Capital, LLC v. Med.*

20   *Insights Diagnostics Cent., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007).

---

22      [3] As the court resolves Defendants' motion to dismiss Plaintiffs' damages claims on

23   qualified immunity grounds, the court need not reach Defendants' Eleventh Amendment defense.
*See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."); *see also Pearson*, 555 U.S. at

24   241 ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of") (citing

25   *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).

26      [4] Defendants argue that such retrospective relief is barred by the Eleventh Amendment.  *See*
*Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 645 (2002) (in order to avoid an

27   Eleventh Amendment bar, a complaint must seek relief "'properly characterized as prospective.'"
(citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997).

28

United States District Court

For the Northern District of California

Plaintiffs argue that members of the Legislature are not proper defendants in this action, and so cannot be bound by any injunction issued by this court. Therefore, Plaintiffs argue, the requested declaratory relief is "a necessary and appropriate means by which the unconstitutionality of [the statutory provisions] can be communicated to the Legislature so to dissuade the Legislature from enacting any further legislation that suffers from the same constitutional shortcomings." (Pls.' Opp'n 25.)

At this early stage in the litigation, it is unclear what the exact contours of any injunctive relief awarded to Plaintiffs would be, should they prevail. The necessity of declaratory relief may be apparent at the time the court reaches a decision on the merits of this case. Further, whether or not Plaintiffs' claims for declaratory relief survive the present motion will not affect the manner in which this case is litigated. Therefore, the court declines to rule on this issue at this time. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for declaratory relief is denied without prejudice.

### D.    Plaintiffs' Claims for Injunctive Relief Against All Defendants

Finally, Defendants move to dismiss Plaintiffs' claims for injunctive relief against all Defendants except the current DFG Director[5], on the grounds that only the current Director, in his official capacity, is responsible for enforcing the challenged statutes. Defendants argue that the Commission has no enforcement role regarding commercial fishing fees and no authority to adjust the fees so that residents and nonresidents would be charged equal amounts. As the Commission Defendants have no authority to enforce the fees at issue, nor adjust the differential fee structure for residents and non-residents, Defendants argue that no injunction against any Commission Defendant can provide relief to Plaintiffs and so such relief is unnecessary. (Defs.' Mot. 19-20.)

Notwithstanding Defendants' arguments that injunctive relief against the Commission Defendants is superfluous, the court concludes that claims for injunctive relief against *any* Defendant other than the current DFG Director are barred by the Eleventh Amendment. Official capacity claims

---

[5] Plaintiffs' FAC names John McCamman as the current DFG Director. While this motion was pending, McCamman left the position and was replaced by Charlton Bonham. Plaintiffs are ordered to reflect this change in their Second Amended Complaint.

United States District Court

For the Northern District of California

1    for equitable relief are not ordinarily subject to the Eleventh Amendment when they are prospective.

2    *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).  Relief is considered "prospective" when it is

3    "designed to end a continuing violation of federal law [and is] necessary to vindicate the federal

4    interest in assuring the supremacy of that law."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).

5    However, the named officials must have "the requisite enforcement connection to" the challenged

6    law for the *Ex parte Young* exception to apply.  *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d

7    835, 847 (9th Cir. 2002) (plaintiffs may sue a state official for injunctive relief under *Ex parte Young*

8    only if the official has "direct authority over and principal responsibility for enforcing" the

9    challenged statute).

10          Plaintiffs argue that they were injured by the failure of the Commission Defendants to

11   exercise their authority under Fish & Game Code section 8552.1 to adjust the fees charged

12   nonresidents for permits, and that there is a continuing threat that, absent the requested injunctive

13   relief, the Commission Defendants and their successors would continue to fail in this duty.  (Pls.'

14   Opp'n 24.)  Therefore, Plaintiffs argue, they are entitled to an injunction requiring the Commission

15   Defendants and/or their successors to fulfill this duty.  However, Plaintiffs allege that *DFG* is the

16   agency that enforces the fees at issue.  (FAC ¶¶ 6, 17, 18, 24, 59, 70, 81, 98.)  Plaintiffs have not

17   alleged that the Commission Defendants are in any way responsible for enforcement.  Further, as

18   discussed *supra*, section 8552.1 only provides that the Commission "*may adjust* the fees charged for

19   permits."  Cal. Fish & Game Code § 8552.1.  In other words, section 8552.1 merely confers

20   discretion on the Commission to adjust fees.  It does not confer the type of authority that establishes

21   the connection to enforcement required by *Ex parte Young*.  Moreover, Defendants Koch and

22   McCamman lack enforcement authority over the challenged statutes, given their status as former

23   DFG Directors.  Therefore, the *Ex parte Young* exception does not apply to the Commission

24   Defendants and Defendants Koch and McCamman, and suit against them is barred by the Eleventh

25   Amendment.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims for injunctive relief

26   against all Defendants except the current DFG Director is granted.

27                                    **IV.  CONCLUSION**

28

14

1   For the foregoing reasons, Defendants' motion to dismiss is denied without prejudice as to

2   Plaintiff's challenge to California's nonresident fee for Dungeness crab vessel permits, granted as to

3   Plaintiffs' claims for monetary damages against all Defendants, denied without prejudice as to

4   Plaintiffs' claims for declaratory relief against all Defendants, and granted as to Plaintiffs' claims for

5   injunctive relief against all Defendants except the current Director of DFG.

6

7   IT IS SO ORDERED.

8

9   Dated: November 8, 2011



DONNA M. RYU
United States Magistrate Judge