IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MARILLEY, *et al.*, | No. C-11-02418-DMR |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| CHARLTON H. BONHAM, in his official capacity. | |
| Defendant. | |

Plaintiffs Kevin Marilley, Salvatore Papetti and Savior Papetti move the court pursuant to Federal Rule of Civil Procedure 23 for class certification. For the reasons below, the court grants Plaintiffs' motion.

## I. BACKGROUND

California charges higher fees to non-residents for commercial fishing licenses, registrations, and permits. *See* Cal. Fish & Game Code §§ 7881 (commercial fishing vessel registrations), 7852 (commercial fishing licenses), 8550.5 (herring gill net permits), 8280.1 (Dungeness crab vessel permits). The 2011 differential fees are as follows:

- Commercial fishing licenses:     $122.75 (residents); $367.75 (non-residents)
- Vessel registration:     $322.25 (residents); $967.50 (non-residents)
- Herring gill net permits:     $341.75 (residents); $1,290.25 (non-residents)

    • Dungeness crab vessels:          $258.25 (residents); $516.00 (non-residents)

(Fourth Am. Compl. ¶ 2.)

On May 18, 2011, Plaintiff Kevin Marilley filed a complaint against numerous Defendants in their individual and official capacities, challenging the constitutionality of California's differential fees under the dormant Commerce Clause, the Privileges and Immunities Clause, the Equal Protection Clause, and 42 U.S.C. § 1983. (Compl. 21-25.) Plaintiff alleged that the current and former directors and chief deputy director of the Department of Fish and Game ("DFG") exercised or failed to exercise their authority to adjust the allegedly discriminatory non-resident commercial fishing fees. (Compl. ¶¶ 26-36.) Plaintiffs similarly alleged that five California Fish and Game Commission members violated their rights by failing to adjust the allegedly discriminatory herring permit fees. (Compl. ¶¶ 26-36.)

On August 22, 2011, Defendants filed a motion to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 6, 2011, Plaintiffs filed a motion for a preliminary injunction enjoining the current DFG director to hold in escrow all amounts collected by the DFG in nonresident fees for the commercial fishing licenses, registrations, and permits at issue pending decision in this case. The court denied the motion for a preliminary injunction on October 3, 2011. Subsequently, in their opposition to Defendants' motion to dismiss, Plaintiffs voluntarily dismissed their Dormant Commerce Clause claim. On November 8, 2011, the court dismissed Plaintiffs' claims for monetary damages and claims against all Defendants except for the current Director in his official capacity, leaving only Plaintiffs' claims for declaratory and injunctive relief under the Equal Protection Clause and Privileges and Immunities Clause. On January 6, 2012, Plaintiffs filed their Fourth Amended Complaint, naming current DFG Director Charlton H. Bonham as Defendant. (*See* Fourth Am. Compl.)

On January 5, 2012, Plaintiffs filed a motion to certify the case as a class action on behalf of the following class:

> All individuals residing in the United States who, during the period beginning on May 18, 2009 through present ("Class Period"), purchased or renewed a California commercial fishing license, permit, or registration, and were required to pay a non-resident fee in connection with such purchase or renewal.

2

(Pls.' Mot. 1.) Plaintiffs Kevin Marilley, Salvatore Papetti, and Savior Papetti are all long-time non-resident California commercial fishermen. (Pls.' Mot. 11.) Plaintiff Kevin Marilley of Bellingham, WA, has been a San Francisco Bay commercial herring fisherman for over twenty years. (Fourth Am. Compl. ¶ 13; Marilley Decl. ¶ 3, Jan. 3, 2012.) Plaintiff Salvatore Papetti, also of Bellingham, Washington, has fished commercially in California for approximately thirty-four years, and has purchased permits, licenses and registrations under each of the four contested statutes. (Fourth Am. Compl. ¶ 14; Salvatore Papetti Decl. ¶ 3, Dec. 30, 2011.) Plaintiff Savior Papetti of McKinney, Texas, has fished commercially for herring and/or Dungeness crab in California for over twenty years. (Fourth Am. Compl. ¶ 15; Savior Papetti Decl. ¶ 3, Dec. 31, 2011.) All three Plaintiffs declare an intent to continue fishing commercially in California as non-residents. (Fourth Am. Compl. ¶¶ 13-15; Marilley Decl. ¶¶ 5-6; Salvatore Papetti Decl. ¶¶ 6-8; Savior Papetti Decl. ¶¶ 3, 7.)

## II. LEGAL STANDARD

To certify a class, Plaintiffs must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). *See* Fed R. Civ. P. 23. Under Rule 23(a), the party seeking class certification must establish that: 1) the class is so large that joinder of all members is impracticable ("numerosity"); 2) there are one or more questions of law or fact common to the class ("commonality"); 3) the named parties' claims are typical of the class ("typicality"); and 4) the class representatives will fairly and adequately protect the interests of other members of the class ("adequacy of representation"). Fed R. Civ. P. 23(a). A party seeking class certification must also show that the action is maintainable under one of Rule 23(b)'s provisions. Fed. R. Civ. P. 23(b); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The party seeking class certification bears the burden of establishing the Rule 23 requirements. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). Analysis of these factors

3

"generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 2552 (internal quotation marks and citation omitted). "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation." *Id*.

### III. DISCUSSION

#### A. Federal Rule of Civil Procedure 23(a)

Defendant disputes that Plaintiffs meet each of the Rule 23(a) requirements for class certification. The court will address each requirement in turn.

#### 1. Numerosity

Numerosity under Rule 23(a) requires that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The facts and circumstances of each case determine whether a class is sufficiently numerous to satisfy Rule 23(a)(1). *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Joinder may be impracticable where a class is geographically dispersed and class members difficult to ascertain or identify. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996). Plaintiffs need not state the exact number or a specific number of class members "so long as the putative class is not amorphous." *Arnold*, 158 F.R.D. at 448 (citation omitted). Courts have found 40 or more class members sufficient and 21 or fewer class members insufficient to satisfy numerosity. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008); s*ee also Morton v. Valley Farm Transp., Inc.*, No. 06-2933, 2007 WL 1113999, at \*4 (N.D. Cal. Apr. 13, 2007).

Plaintiffs argue that the proposed class meets the numerosity requirement of Rule 23(a)(1) based on the estimated numbers of the class and their broad geographic diversity. (Pls.' Mot. 9-10.) DFG statistics indicate the purchase of 724 non-resident commercial fishing licenses in 2010; 721 of the purchasers qualify as "non-residents" (three indicated non-U.S. mailing addresses), with mailing addresses in twenty-seven states. (Gross Decl. Ex. C, Jan. 5, 2012.) In addition, DFG issued 310 commercial boat registrations, 74 crab vessel permits, and 40 herring gill net permits to non-residents in 2010. (Gross Decl. Ex. C.) Plaintiffs assert that it can safely be estimated that there are

4

over 1000 persons in the proposed class, extrapolating from the information to account for other years of the class period and liberally accounting for overlap between years. Plaintiffs argue that this large number coupled with the geographic diversity of the putative class members satisfies Rule 23(a)(1). (Pls.' Mot. 10.)

Defendant questions Plaintiffs' method for estimating total class membership at over 1000, arguing that one person can hold multiple permits or registrations, and that class-ineligible corporations often hold vessel registrations and Dungeness crab vessel permits. (Def.'s Opp'n 3-5.) However, California's commercial fishing license requirement appears to allow only one license per person, and applies to natural persons, and not partnerships, corporations, or associations. *See* Cal. Fish & Game Code § 7850(a), (c). Defendant does not dispute that at least 721 separate individuals from 27 states purchased commercial fishing licenses from DFG in 2010, and does not contend that any of these commercial fishing licenses are held by business entities. Therefore, at a minimum, it appears that the number of putative class members is *at least* 721. As DFG data only accounts for one type of registration in only one of the years (2010) in the proposed class period, it is probable that the total size of the proposed class exceeds 721. Plaintiffs are not required to state the exact number of class members. *Arnold*, 158 F.R.D. at 448. The likely size of the class, particularly coupled with its geographic diversity, amply satisfies the numerosity requirement.

### 2. Commonality

Commonality requires the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.,* 1 William B. Rubenstein, Newberg on Class Actions § 3:19 (5th ed. 2011). Courts construe this requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* In fact, it only takes one common question of fact or law shared between proposed class members to satisfy commonality. *Dukes*, 131 S. Ct. at 2556. A "common" question of law or fact need not be completely "congruent" to satisfy Rule 23(a)(2). *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990

5

(9th Cir. 2006). Differences in "the nature of the particular statute" at issue in a proposed class action will not defeat commonality if "the constitutional issue at the heart of each class member's claim for relief is common." *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010). Furthermore, the court may consider whether "[a]nswering comprehensively in a class setting the constitutional question that is at the center of the proposed class's claims will facilitate development of a uniform framework" for addressing individual grievances. *Id.*

Plaintiffs allege that each proposed class member "raises the same constitutional question[s]" with only slight potential variations, depending on which license, permit and/or registration a particular class member intends to purchase or renew. (Pls.' Mot. 10.) Plaintiffs formulate the constitutional questions as follows:

> (1) are the Nonresident Fees charged for the licenses, permits, and/or registrations challenged in this action constitutional under the Privileges and Immunities Clause, Article 4 of the U.S. Constitution; and (2) are they constitutional under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

(Pls.' Mot. 10.) Plaintiffs also argue that proposed class members share questions that go to their entitlement to declaratory and injunctive relief arising from the constitutional claims. (Pls.' Mot. 10.)

Defendant contends that the proposed class fails to satisfy Rule 23(a)(2) because the members of the proposed class have not been subjected to the same treatment, in that they "could pay a dizzying array of different fees" because they may hold different combinations of licenses and thus do not raise the same "crucial question." ( Def.'s Opp'n 5-6.) Further, Defendant argues that the proposed class lacks "commonality of facts," pointing to the factual differences between the four challenged fees, such as the differences in statutes setting the fees, the different dates at which the fees were set, the differences in the amounts of fees themselves, what the fees permit the payees to do, and the rules governing each license, permit, or registration. (Def.'s Opp'n 7-8.) However, Plaintiffs have articulated a common constitutional issue at the heart of each proposed class member's claim for relief. Neither factual differences between the proposed class members nor the plurality of implicated statutes defeats commonality where class members share such a common question. *See Rodriguez*, 591 F.3d at 1123 (in lawsuit challenging three separate immigration

detention statutes, although the "nature of the particular statute" at issue "will play some role in determining whether class members are entitled to relief," the "constitutional issue at the heart of each class member's claim for relief is common.") The proposed class members all question the constitutionality of the DFG practice of charging differential fees regardless of which DFG licenses, permits or registrations, or combination thereof each individual class member may purchase. Rule 23(a)(2) does not require any more stringent congruence amongst the claims of proposed class members.

Defendant also contends that the proposed class fails to satisfy Rule 23(a)(2) because some corporate and individual class members lack standing. (Def.'s Opp'n 8-10.) Rule 23 merely requires that a *named* plaintiff have personally sustained or be in immediate danger of sustaining "some direct injury as a result of the challenged statute or official conduct." *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *see also Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) ("[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.") A named plaintiff must be part of the proposed class, possessing the same interest and suffering the same injury shared by all members of the class he represents. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). However, the propriety of awarding class-wide relief does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs. *Lewis v. Casey*, 518 U.S. 343, 395 (1996). Defendant does not dispute Plaintiffs' standing to bring these claims, and as non-resident fishermen who have paid DFG non-resident fees and intend to fish commercially in California as non-residents in the future, all three named plaintiffs share an alleged injury with the proposed class. The court finds the proposed class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class. The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (quoting

*Schwarz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Like commonality, the typicality requirement is permissive, and is "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124, quoting *Armstrong*, 275 F.3d at 868 (internal citation omitted). The claims of the class representatives are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. As with commonality, the fact that claims of class members may arise from different statutes does not defeat typicality where all claims "raise similar constitutionally-based arguments." *Rodriguez*, 591 F.3d at 1124.

Plaintiffs collectively claim on behalf of other proposed class members that non-resident fees are unconstitutional under the Privileges and Immunities Clause and the Equal Protection Clause. Defendant contends that the proposed class does not satisfy Rule 23(a)(3) because the named Plaintiffs have purchased different combinations of licenses, permits and registrations, and because none of these combinations are typical of proposed class members. (Def.'s Opp'n 10-11.) This court ultimately must determine the constitutionality of each of the four licenses, permits and registrations at issue. At least one of the named Plaintiffs holds each type of those licenses, permits and registrations. (Marilley Decl. ¶¶ 4-6; Salvatore Papetti Decl. ¶¶ 3-8; Savior Papetti Decl. ¶¶ 3-7.) The constitutionally-based claims raised by the named plaintiffs are thus typical insofar as their resolution would inform similar claims by other proposed class members regardless of factual differences among class members. Therefore, the court finds that the proposed class satisfies the typicality requirement of Rule 23(a).

### 4. Adequacy of Representation

Rule 23(a) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether representation is adequate under Rule 23(a)(4), the court must assess whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

1    Plaintiffs contend that they are all long-time non-resident California commercial fishermen
2 with the same litigation interests as absent class members. (Pls.' Mot. 11.) Furthermore, Plaintiffs
3 argue that because the court has removed the possibility of money damages, there can be no
4 conflicts of interest. (Pls.' Mot. 11-12.) Plaintiff Marilley has fought non-resident differential fees
5 for decades, and Plaintiffs contend that proposed class counsel is well qualified and has
6 demonstrated commitment thus far. (Marilley Decl. ¶¶ 10-14, 16.) Defendant disputes Plaintiffs'
7 assertion that they have vigorously prosecuted the case, contending that a delay in moving for a
8 preliminary injunction privileged herring fishermen at the expense of class members holding other
9 permits. (Def.'s Opp'n 11-12.) However, the court finds no evidence in the record of a conflict of
10 interest or lack of diligence on the part of Plaintiffs or their counsel. The court finds that Plaintiffs
11 have adequately demonstrated their commitment to pursuing this case on behalf of the class and
12 counsel's ability to competently represent them in this litigation. The proposed class satisfies the
13 adequacy of representation requirement.

### B.    Federal Rule of Civil Procedure 23(b)(2)

Plaintiffs move to certify the class under Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is satisfied where "'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125 (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). Furthermore, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* Plaintiffs have demonstrated that Defendant has acted on grounds applicable to the class, since Defendant has imposed, and will continue to impose, differential fees for non-resident commercial fishermen, and relief will inure to the entire class. This conforms to what the Ninth Circuit has called "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)." *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977), *aff'd in part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). The proposed class therefore fulfills the explicit

requirement of Rule 23(b)(2).

Defendant argues that the court should exercise its discretion to deny Plaintiff's motion for class certification under Rule 23(b)(2) because the requested relief will inure to all class members without certification, and Plaintiffs fail to demonstrate that certification would serve any significant purpose. (*See* Def.'s Opp'n 17-20.) Thus, Defendant argues, there is no need to certify a class in this matter. Defendant points to a number of cases where courts have denied class certification under Rule 23(b)(2) on grounds that the movant failed to establish such a need. *See, e.g., Calderon v. Madigan*, 831 F. Supp. 1484, 1488-89 (D. Idaho 1992); *Snake River Farmers Ass'n v. U.S. Dep't of Labor*, Nos. 91–0075-S, 91–0130-S, 1991 WL 539566, at *3-4 (D. Idaho. Oct. 1, 1991). The Ninth Circuit has held that courts may exercise discretion to deny certification when the relief sought would "as a practical matter, produce the same result as formal class-wide relief." *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979), *rev'd on other grounds,* 451 U.S. 355 (1981). However, Defendant concedes that the Ninth Circuit does not *require* courts to consider "need" or "necessity" when determining whether Rule 23(b)(2) is satisfied. (Def.'s Opp'n 16.)

Instead of imposing a strict "need" requirement in determining whether a class should be certified under Rule 23(b)(2), a number of courts have looked at whether class certification would serve any useful purposes as simply one of many factors to be considered in making a class action determination. One court described other useful benefits of class actions as follows:

> [T]he use of class actions allows a large number of plaintiffs to pool resources to hire attorneys capable of conducting complex litigation. Class actions require court approval of settlements, so that courts can ensure that the interests of a wide group of people have been protected and advanced. Class actions enable unidentified class members to enforce court orders with contempt proceedings, rather than relying on res judicata in a subsequent lawsuit. Finally, class actions enable plaintiffs to avoid the mooting of important claims.

*Nehmer v. U.S. Veterans' Admin.,* 118 F.R.D. 113, 119 (N.D. Cal. 1987). In that case, the court certified a class pursuant to Rule 23(b)(2) where the plaintiffs challenged the implementation of the Veterans' Dioxin and Radiation Compensation Standards Act, which "empower[ed] the Veterans' Administration to determine what diseases were caused by exposure to dioxin and promulgate regulations to govern dioxin-related disability claims." *Id*. at 115. The proposed class included

10

previously-denied benefits applicants, and the court certified a class in part because it recognized that, without notice secured by class certification, class members would have no way of knowing they were entitled to past benefits. *Id*. at 120. In contrast, another court denied certification where it found that its order granting injunctive relief was adequate to provide notice to those affected in a case challenging the imposition of monthly premiums and co-payments in connection with a health insurance plan. *Spry v. Thompson,* No. 03-121, 2004 WL 1146543, at *6 (D. Or., May 20, 2004).

Here, while class certification would not provide any additional relief to class members beyond the injunctive relief Plaintiffs seek, the court concludes that it nevertheless would serve a number of useful purposes. Pursuant to a stipulated protective order entered in this case, Plaintiffs are barred from using information provided by Defendant containing identities and contact information of persons who have paid non-resident DFG fees absent an order certifying a class or modifying the protective order. [Docket No. 57, at 2.] Certification would remove this restriction, and allow Plaintiffs to contact all of the proposed class members. [*See* Docket No. 57, at 2.] Plaintiffs have made a showing that "rumors and misinformation" are not uncommon among the commercial fishing community, even with respect to this litigation. (Pls.' Mot. 15-16.) In particular, many members of the proposed class, as well as Plaintiffs' counsel, were involved in litigation arising out of the 2007 Cosco Busan oil spill. Many of the class and individual settlements that resulted from that litigation linked compensation to possession of certain permits on certain dates. (*See* Pls.' Mot. 15.) Plaintiffs have demonstrated that there is a danger that some of the proposed class members in this case might make damaging choices regarding renewal of DFG licenses, permits or registrations based on a lack of accurate information. (Pls.' Mot. 15-16.) Granting Plaintiffs' counsel the ability to communicate with all class members, with the added protection of attorney-client privilege, would help ensure dissemination as well as collection of accurate information.

In addition, class certification in this case would impose a relatively light burden on case management and the time and resources of the parties. While the court may exercise its discretion to "direct appropriate notice to the class," the court is not required to do so in cases certified solely under Rule 23(b)(2). Fed. R. Civ. P. 23(c)(2)(A). As noted by the court in *Nehmer*, if a class is

11

1 certified, any settlement of Plaintiffs' claims would require court approval. *Nehmer*, 118 F.R.D. at
2 119. While fairness proceedings would require some additional expenditure of resources, it would
3 also enhance the protection of class members' rights.

4 The court finds that all of these factors weigh in favor of granting class certification.
5 Therefore, the court finds that the proposed class satisfies the requirements of Rule 23(b)(2).

### C. Federal Rule of Civil Procedure 23(g)

Parties bringing actions "in their individual capacities or as class representatives" typically may choose their own class counsel. *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) (citation omitted). In determining adequacy of proposed class counsel, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' proposed class counsel, Stuart Gross, has experience in handling class actions, complex litigation, and natural resource litigation. (*See* Gross Decl. ¶¶ 29-35; Ex. E.) He has done substantial work in identifying and pursuing Plaintiffs' claims, and has demonstrated knowledge of the applicable law and ability to commit sufficient resources to represent the class. Accordingly, the court finds that proposed class counsel satisfies the requirements of Rule 23(g).

## V. CONCLUSION

For the reasons stated above, the court finds that Plaintiffs have sufficiently demonstrated each of the required factors for class certification under Federal Rule of Civil Procedure 23. Accordingly, the court GRANTS Plaintiffs' motion for class certification and HEREBY certifies a class consisting of:

> [a]ll individuals residing in the United States who, during the period beginning on May 18, 2009 through present ("Class Period"), purchased or renewed a California commercial fishing license, permit, or registration, and were required to pay a non-resident fee in connection with such purchase or renewal.

The court also GRANTS Plaintiffs' motion to appoint Stuart Gross as Class Counsel in this matter.

IT IS SO ORDERED.

Dated: March 13, 2012



_____
DONNA M. RYU
United States Magistrate Judge