UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MARILLEY, et al., | No. C 11-02418 DMR |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL** |
| v. | |
| JOHN MCCAMMAN, | |
| Defendant. | |

Before the court is Plaintiffs' motion to compel documents over which Defendant has asserted the deliberative process privilege. [Docket No. 94.] Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel at the September 13, 2012 hearing, the court hereby GRANTS Plaintiffs' motion.

**I. Background**

California charges higher fees to non-residents for commercial fishing licenses, registrations, and permits. *See* Cal. Fish & Game Code §§ 7881 (commercial fishing vessel registrations), 7852 (commercial fishing licenses), 8550.5 (herring gill net permits), 8280.1 (Dungeness crab vessel permits). Plaintiffs are nonresident commercial fishermen. They represent a class of individuals who, since 2009, have purchased or renewed commercial fishing licenses, permits, and/or registrations and were required to pay non-resident fees. Plaintiffs challenge the constitutionality of California's differential fees under the Privileges and Immunities Clause and the Equal Protection

Clause of the United States Constitution. Defendant Charlton Bonham is the Director of the California Department of Fish & Game ("DFG"), which has authority to administer and enforce policies and provisions of the California Fish and Game Code and associated regulations.

Plaintiffs move to compel production of 21 documents listed on Defendant's privilege log. The documents at issue are draft enrolled bill reports, draft bill analyses, a final bill analysis, and a draft proposed amendment for use in a bill analysis, all of which were prepared by the DFG and address three pieces of legislation that Plaintiffs allege are relevant to this litigation. Defendant has asserted the deliberative process privilege for each of the documents.

## II. Discussion

### A. Legal Standards

Federal Rule of Civil Procedure 26 governs the scope of discovery, and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal privilege law applies in this federal question case. *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996) (citing Fed. R. Evid. 501.) Federal law recognizes the deliberative process privilege, which shields confidential inter-agency memoranda on matters of law or policy from public disclosure. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988). Under the privilege, a government may withhold documents that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The purpose of the privilege is "to promote frank and independent discussion among those responsible for making governmental decisions and also to protect against premature disclosure of proposed . . . policies or decisions." *Id.* (citations omitted).

In order to be protected by the deliberative process privilege, "a document must be both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *U.S. v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (internal quotation marks and citation omitted). This dual requirement

1  reflects the privilege's purpose of protecting the deliberative process leading up to decisions. *Nat'l*
2  *Wildlife Fed'n*, 861 F.2d at 1117. "Purely factual material that does not reflect deliberative
3  processes is not protected." *FTC*, 742 F.2d at 1161. The burden of establishing application of the
4  privilege is on the party asserting it, *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118,
5  1122 (N.D. Cal. 2003), and even if established, the privilege is "strictly confined within the
6  narrowest possible limits consistent with the logic of its principles." *Sanchez v. Johnson*, No. C-00-
7  1593 CW (JCS), 2001 WL 1870308, at *6 (N.D. Cal. Nov. 19, 2001) (internal quotation marks
8  omitted).

9      The deliberative process privilege is a qualified one. "A litigant may obtain deliberative
10 materials if his or her need for the materials and the need for accurate fact-finding override the
11 government's interest in non-disclosure." *FTC*, 742 F.2d at 1161. In balancing the need for
12 disclosure against the need for confidentiality, the Ninth Circuit has considered the following
13 factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the
14 government's role in the litigation; and (4) the extent to which disclosure would hinder frank and
15 independent discussion regarding contemplated policies and decisions." *Id*. Other factors that
16 courts may consider include: "(5) the interest of the litigant, and ultimately society, in accurate
17 judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of
18 issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement
19 of federal law." *North Pacifica*, 274 F. Supp. 2d at 1122.

20     **B.    Analysis**

21     Defendant has invoked the deliberative process privilege as to four draft enrolled bill reports,
22 fifteen draft bill analyses, one final bill analysis and a draft proposed amendment prepared for use in
23 a bill analysis. (Gross Decl. Ex. 10 (privilege log), Aug. 2, 2012; Def.'s Opp'n 5.) Bill analyses are
24 prepared for bills when they are set for hearing or otherwise requested by the Governor's office;
25 they provide information concerning the probable program and fiscal effects of proposed legislation
26 pending before the Legislature. (Gross Decl. Ex. 2.) A bill analysis also recommends a position
27 which the Administration should adopt on the proposed legislation. *Id*. An enrolled bill report
28

("EBR") is similar, except it pertains to a bill already passed by the Legislature. EBRs also include recommendations to the Administration regarding whether to sign the bill. (Gross Decl. Ex. 1.)

The withheld documents, which "are prepared by [DFG] staff and reflect recommendations and deliberations relating to the [DFG's] policy formulation on pending legislation," are clearly deliberative. (Def.'s Opp'n 5.) They are also predecisional. *See Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997) (a "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."); *see also California State Foster Parent Ass'n v. Wagner*, No. C 07-05086 WHA, 2008 WL 2872775, at *2-4 (N.D. Cal. July 23, 2008) (concluding bill analyses and enrolled bill reports compiled by California Department of Social Services Office of Legislation were deliberative and predecisional.) Accordingly, they are protected by the deliberative process privilege. Therefore, the court must determine whether Plaintiffs' need for the materials overrides Defendant's interest in non-disclosure.

### 1. Relevance of the Documents at Issue

The documents at issue are related to three pieces of legislation: AB 1442, AB 601, and AB 2519. Most of the documents pertain to AB 1442, which was enacted in 2009 and amended several sections of California law, including one provision of the Fish and Game Code which extended the sunset provision for the commercial Dungeness crab fishery, thus continuing the regulatory structure for the fishery that was already in place. (Def.'s Opp'n 7.) That regulatory structure includes the Dungeness crab vessel permit fees Plaintiffs challenge in this action. (Dennis Decl. Ex. D, AG000325 (detailing Dungeness crab resident and non-resident permit revenues), Aug. 16, 2012.) Similarly, AB 601, enacted three years earlier, extended the sunset provisions for the commercial Dungeness crab fishery to 2010. (Def.'s Opp'n 7.) AB 2519, enacted in 2004, extended authority to the Fish and Game Commission to adjust fees charged for herring gill net permits. (Def.'s Opp'n 7; Dennis Decl. Ex. F.)

The gravamen of Plaintiffs' complaint is that California's differential fee structure for the commercial fishing licenses, registrations, and permits at issue impermissibly discriminates against

non-residents. Courts employ a two-step test to determine whether residency classifications run afoul of the Privileges and Immunities Clause. First, a court must determine "whether the activity in question is 'sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause.'" *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008) (quoting *Supreme Court of Va. v. Friedman*, 487 U.S. 59 at 65 (1988)) (ellipses in original) (emphasis removed). If the court finds that the contested restriction falls within the Clause's ambit, the court will deem the restriction unconstitutional if the state cannot show that it is "'closely related to the advancement of a substantial state interest.'" *Id.* (quoting *Friedman*, 487 at 65). A substantial reason for state residency-based discrimination exists only if evidence indicates that "'non-citizens constitute a peculiar source of the evil at which the statute is aimed.'" *Id.* (quoting *Toomer v. Witsell*, 334 U.S. 385, 398 (1948)). Therefore, "the inquiry . . . must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them." *Toomer*, 334 U.S. at 396 (footnote omitted). The court may find the discriminating restriction not closely related to a substantial state interest if there exist "less restrictive means" to achieve that objective. *Piper*, 470 U.S. at 284. With respect to Plaintiffs' Equal Protection claim, the state must show that the residency classification is rationally related to a legitimate governmental purpose. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

      Plaintiffs argue that EBRs and bill analyses concerning bills "that created, or perpetuated, the challenged discrimination" are directly relevant to the issues in this case, as they may reflect "(1) an absence of any evidence that nonresidents were identified as a peculiar source of evil at which the bills were aimed; (2) an absence of evidence that means to address this evil less restrictive of the rights of nonresidents to earn a living in California were considered and rejected; and/or (3) that the State's purpose in enacting, and/or perpetuating the discriminatory fees, was to protect resident commercial fishermen from competition from nonresidents." (Pls.' Mot. 8.) While each of the bills concern the challenged fee differentials, Defendant argues that the fees "were not established or changed" by AB 1442, AB 601, or AB 2519. The fees at issue were actually enacted years earlier, in 1992 (SB 1565, commercial herring gill net permit), 1994 (AB 3337, commercial Dungeness crab

1 vessel permit), and 1992/2003 (SB 1565 and SB 1049, commercial fishing license and commercial
2 vessel registration). (Def.'s Opp'n 6.) As the documents sought by Plaintiffs relate to legislation
3 that was introduced several years later and "did not create or alter the discrimination alleged by
4 Plaintiffs," Defendant argues they are not relevant. *Id*.

5      Although the challenged Dungeness crab fee differential was originally established in 1994,
6 Plaintiffs point out that AB 601 and AB 1442 actually re-established the challenged differential
7 between resident and non-resident Dungeness crab vessel permit fees following their expiration.
8 (Pls.' Reply 1.) AB 3337, the original bill which established the regulatory structure for the
9 commercial Dungeness crab fishery, including the higher non-resident vessel permit fees, contained
10 a sunset provision. Plaintiffs submit a piece of legislative history of AB 3337 that they argue
11 demonstrates that sponsors placed a sunset provision in the bill so that the structure, including its
12 differential fees, "could be re-evaluated for its effectiveness and, if necessary, be amended or
13 revised." (Gross Decl. in Supp. of Pls.' Reply ("Gross Reply Decl.") Ex. 1, Aug. 2, 2012.)
14 Therefore, by operation of law, the regulatory structure established by AB 3337, including the
15 differential fees, was to become inoperative on a certain date unless the Legislature made the
16 decision to extend them. (Pls.' Reply 3.) The Legislature ultimately voted to extend the regulatory
17 structure five times, including in 2006, through AB 601, and in 2009, through AB 1442. *Id*. Thus,
18 Plaintiffs argue, what occurred, or did not occur, during each extension of the regulatory structure is
19 directly relevant to the issues in this case. Plaintiffs seek the documents at issue to determine, for
20 example, whether "nonresidents [were] identified in any of these instances as a peculiar source of an
21 evil that justified extending the discriminatory fees charged to them," whether "any substantial state
22 interest [was] identified during any of these decision-making processes," or whether the fees were
23 "arbitrarily extended without any analysis at all." (Pls.' Reply 3.) To the extent that the final and
24 draft versions of bill analyses and EBRs for AB 1442 and AB 601 contain (or do not contain) any
25 facts or analysis compiled by the DFG and considered by the Governor as to whether the regulatory
26 structure, including the differential fees at issue, should be extended, the court finds these documents
27 are relevant to Plaintiffs' claims.

Similarly, AB 2519 did not establish the non-resident herring gill net permit fee. However, Plaintiffs have presented legislative history that AB 2519 was enacted as a result, in part, of efforts by nonresident herring fishermen to remedy a clerical error that created a substantial differential between non-resident and resident herring gill net permit fees, which, if remedied, could have dramatically reduced the revenues which DFG uses to pay for herring fishery management costs. (Pls.' Reply 4-6.) The information in the withheld documents pertaining to AB 2519 could potentially be highly relevant, particularly inasmuch as they confirm that the differentials resulted from a clerical error, as opposed to an analysis that justified charging nonresidents a higher fee.

Defendant also argues that the documents at issue are not relevant because draft EBRs and bill analyses "are not the [DFG's] official position, and could not be ascribed to the [DFG], much less the Legislature." (Def.'s Opp'n 7-8.) Although the draft documents may not reflect the DFG's official position, there is no question that they are predecisional, "prepared in order to assist an agency decisionmaker in arriving at his decision." *See Maricopa*, 108 F.3d at 1093 (predecisional documents may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.") (internal quotation marks and citation omitted). As such, they contain evidence that is relevant to Plaintiffs' claims and very likely to defenses that will be raised by Defendant as well. *See Sanchez*, 2001 WL 1870308, at *7 (concluding final and draft versions of budget proposals "contain detailed facts and analysis" regarding key issue in plaintiffs' case). Further, the California Supreme Court has found "enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent." *Elsner v. Uveges*, 34 Cal.4th 915, 934 fn.19 (2004); *see also People v. Allen*, 88 Cal. App. 4th 986, 995 fn.19 (2001) (while EBRs "do not necessarily demonstrate the Legislature's intent, they can *corroborate* the Legislature's intent . . . by reflecting a contemporaneous common understanding shared by participants in the legislative process from both the executive and legislative branches.") (internal citation omitted) (emphasis in original). The DFG has primary responsibility for the management of the Dungeness crab and herring fisheries, and evidence presented by Plaintiffs suggests that the DFG was involved in drafting and presenting the bills at issue. (Gross Reply Decl. Exs. 3, 5.) The court

concludes that the withheld documents are part of the legislative history of the legislation at issue and therefore relevant.

### 2. Availability of Comparable Evidence From Other Sources

The documents in question are analyses completed by the DFG, the agency responsible for administering and enforcing the relevant provisions of the California Fish and Game code. With respect to the availability of comparable evidence from other sources, Defendant argues that a withheld bill analysis for AB 1442 contains a fiscal impact analysis of the revenue the DFG would lose from the challenged fees in the absence of the extension of the regulatory structure, but that it has already produced a document containing this information. (Def.'s Opp'n 8.) However, while some of the factual information contained in the documents may have already been provided to Plaintiffs, other relevant information, such as draft advice, opinions, recommendations, and proposals by the DFG, has not. Defendant has not demonstrated that Plaintiffs would be able to obtain comparable analyses elsewhere. This factor weighs heavily in favor of disclosure. *See North Pacifica*, 274 F. Supp. 2d at 1124 (noting that this factor is "perhaps the most important factor in determining whether the deliberative process privilege should be overcome."); *see also Sanchez*, 2001 WL 1870308, at *7 (concluding that while some of the factual information contained in the documents sought "may be available elsewhere, it is obvious that the quality and persuasiveness of such evidence is likely to be substantially inferior to the agencies' own budget requests, which provide detailed analysis").

### 3. Government's Role in the Litigation and Issues of Alleged Governmental Misconduct

As the defendant, the government plays a prominent role in this litigation. The governmental decisionmaking behind the differential fee structure "is by no means collateral to the litigation; indeed, the decisionmaking process 'is not swept up into the case, it *is* the case.'" *North Pacifica*, 274 F. Supp. 2d at 1124 (quoting *U.S. v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989) (emphasis in original). As one court noted, "[t]he privilege was fashioned in cases where the governmental decisionmaking process is *collateral to the plaintiff's suit* . . . [i]f the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the

privilege as a shield." *In re Subpoena Duces Tecum Served on Office of Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) (emphasis added). Here, there is no question that the Legislature's decisionmaking process with respect to the differential fees "*is*" the case. Defendant argues that it is not the DFG's intent which is at issue, but instead the Legislature's. (Def.'s Opp'n 9.) Again, while the documents at issue "do not necessarily demonstrate the Legislature's intent, they can corroborate the Legislature's intent." *Allen*, 88 Cal. App. 4th at 995 n.19 (emphasis removed). Thus, these factors weigh in favor of disclosure. *See Newport Pacific, Inc. v. County of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) (where plaintiffs alleged defendants, *inter alia*, denied plaintiffs equal protection and due process, court noted that "the role of the government in the litigation itself . . . tip[s] the scales in favor of disclosure.")

### 4. The Possible Chilling of Agency Discussion

Defendant relies on a declaration by Susan LaGrande, DFG Director of Legislative Affairs, for the proposition that disclosure of the documents here "would inhibit the free flow of ideas among Department staff regarding the pending legislation by disclosing preliminary staff opinions, recommendations, and deliberations regarding the legislation." (LaGrande Decl. ¶ 3, Aug. 16, 2012.) However, the court is not convinced that communications in the future are likely to be chilled, and moreover, "if because of this case, members of government agencies acting on behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served." *Newport Pacific, Inc.*, 200 F.R.D. at 640; *see also North Pacifica*, LLC, 274 F. Supp. 2d at 1125. The court concludes that a protective order will help mitigate these concerns. *See Price v. County of San Diego*, 165 F.R.D. 614, 620 (S.D. Cal. 1996) (concluding that documents at issue should be produced and noting that "the infringement upon the frank and independent discussions regarding contemplated policies and decisions by the County . . . can be alleviated through the use of a strict protective order.").[1]

---

[1] At oral argument, the parties represented that the protective order already in place covers only documents that contain personal identifying information of class members. Accordingly, the court amends the protective order to cover all documents for which Defendant has claimed the deliberative process privilege. Such documents shall be designated as confidential and may only be used for the purposes of this litigation. However, confidential designation itself does not satisfy the standard for filing documents under seal.

**5. Interest in Accurate Judicial Fact-Finding, Federal Interest in Enforcement of Federal Law, and the Seriousness of the Litigation and Issues Involved**

The desirability of accurate fact finding certainly weighs in favor of disclosure. Moreover, where, as here, federal constitutional rights are at stake, the interest is heightened. *See North Pacifica*, 274 F. Supp. 2d at 1124. The litigation and issues involved are indisputably serious, and the federal interest in the protection of the rights, privileges, and immunities guaranteed by the Privileges and Immunities and Equal Protection Clauses is substantial and also weighs in favor of disclosure of the documents. *See id.*

### III. Conclusion

While the deliberative process privilege is applicable to the documents withheld by Defendant, given the factors discussed above, the court finds that Plaintiffs' need for disclosure overrides Defendant's interest in confidentiality. Accordingly, Plaintiffs' motion to compel is GRANTED.

IT IS SO ORDERED.

Dated: September 19, 2012



_____
DONNA M. RYU
United States Magistrate Judge