1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT OF CALIFORNIA

10

11   KEVIN MARILLEY, *et al.*,                    No. C-11-02418 DMR

12              Plaintiffs,                        **ORDER ON FEBRUARY 1, 2013 JOINT
                                                   DISCOVERY LETTER**
13        v.

14   CHARLTON BONHAM,

15              Defendant.
     _____/
16

17

18        Plaintiffs and non-party California Office of Legislative Counsel ("OLC") filed a joint

19   discovery letter regarding Plaintiffs' request for an order compelling the production of documents

20   over which OLC has asserted the attorney-client, legislative, and official information privileges.

21   [Docket No. 118 ("Jt. Letter").]  The court held a hearing on the dispute on March 6, 2013, at which

22   Plaintiffs and OLC were represented by counsel.  For the following reasons, the court concludes that

23   the documents are protected from discovery by the attorney-client privilege and hereby DENIES

24   Plaintiffs' motion.[1]

25                                     **I.  Background**

26

27
          [1] As the court concludes that the documents are protected by the attorney-client privilege, it need
28   not reach the parties' arguments about the applicability of the legislative and official information
     privileges.

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    In this class action, Plaintiffs challenge the constitutionality of California's practice of

2 charging higher fees to non-residents for commercial fishing licenses, registrations, and permits.

3 Plaintiffs are non-resident commercial fishermen and represent a class of individuals who, since

4 2009, have purchased or renewed commercial fishing licenses, permits, and/or registrations and

5 were required to pay non-resident fees.  Plaintiffs allege California's differential fees violate the

6 Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution.

7 Defendant Charlton Bonham is the Director of the California Department of Fish & Game, which

8 has authority to administer and enforce policies and provisions of the California Fish and Game

9 Code and associated regulations.

10    In 1992, the legislature passed SB 1565, which raised the fees for nonresident herring gill net

11 permits to $1,000.  Plaintiffs allege that the establishment of this fee was the result of a clerical

12 error. (Jt. Letter 2-3.)  The provisions of SB 1565 regarding the nonresident herring gill net permits

13 were originally contained within a different bill, SB 2050, which was authored by state Senator Dan

14 McCorquodale. (Jt. Letter 2.)  Plaintiffs assert that Senator McCorquodale intended the bill to raise

15 a *different* permit fee (the nonresident herring round haul permit fee) to $1,000, and to raise the

16 nonresident herring gill net permit fee to $660.  According to Plaintiffs, at some point in the

17 legislative process, the two figures were transposed.  (Jt. Letter 2.)  Plaintiffs obtained a document

18 from the Assembly Water Parks and Wildlife Committee's bill file for SB 2050 which includes

19 amended bill language created by OLC dated July 24, 1992 (the "July 24 OLC amendments").  (Jt.

20 Letter 3.)  Plaintiffs assert that this document reflects the transposition error, as it describes the

21 amendment to the draft of SB 2050 which changed the nonresident herring gill net permit fee from

22 $660 to $1,000.[2]  (Jt. Letter 3.)  Ultimately, the alleged transposition error was included in the July

23 28, 1992 amendment of SB 2050 and was never corrected.  (Jt. Letter 3.)

24    Plaintiffs issued a subpoena to non-party OLC for documents regarding the enactment of SB

25 1565 and SB 2050.  OLC produced certain documents and withheld four documents from production

26 _____

27    [2] According to Plaintiffs, the amended bill language is as follows: "On page 28, line 7, strike out 'six hundred sixty dollars ($660)' and insert: one thousand dollars ($1,000).'  Page 28, line 7, of the previous version [of] SB 2050, set the fee for a Nonresident Herring *Gill Net* Permits at $660."  (Jt.

28 Letter 3 (emphasis in original, internal quotation marks omitted).)

United States District Court

For the Northern District of California

1    on the grounds that they are protected by the attorney-client privilege and the legislative and official

2    information privileges.  The first two documents in dispute (listed on OLC's privilege log as nos. 1

3    and 2) pertain to requests for legal drafting services by Senator McCorquodale to OLC.  (Jt. Letter

4    7.)  The third and fourth documents (log nos. 3 and 4) consist of draft amendments to SB 2050

5    which contain hand-written notes that reflect communications between OLC and Senator

6    McCorquodale.  The description of the fourth document on the log indicates that it consists of two

7    parts, dated July 22, 1992 and July 24, 1992.  Plaintiffs already have the July 24, 1992 portion of the

8    fourth document in their possession.[3]  (Jt. Letter 8 n.4.)  Plaintiffs argue that disclosure of the July

9    24, 1992 OLC amendments resulted in a waiver of the attorney-client privilege for the other

10   privileged documents, since they concern the same subject matter.  In addition, Plaintiffs argue that

11   the legislative and deliberative process privileges are qualified privileges that are overcome in these

12   circumstances.  (Jt. Letter 4-5.)

### II.  Discussion

#### A.      Legal Standards

15        Federal Rule of Civil Procedure 26 governs the scope of discovery, and provides that

16   "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

17   claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears

18   reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

19   Federal privilege law applies in this federal question case.  *NLRB v. North Bay Plumbing, Inc.*, 102

20   F.3d 1005, 1009 (9th Cir. 1996) (citing Fed. R. Evid. 501.)

21        The attorney-client privilege protects from discovery "confidential communications between

22   attorneys and clients, which are made for the purpose of giving legal advice."  *United States v.*

23   *Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *see Vasudevan Software, Inc. v. IBM*

24   *Corp.*, No. 09-5897-RS, 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011).  The privilege is

25   "narrowly and strictly construed," and the party asserting it bears the burden of proving that it

26   applies.  *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1 (footnotes and quotation marks

27

28        [3] OLC represents that the July 24, 1992 document is identical to the version in Plaintiffs' possession, except that Plaintiffs' document includes the words "File Copy."

3

omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that

party asserting privilege "must make a *prima facie* showing" that privilege applies) (citing *In re*

*Grand Jury Invest.*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see Richey*, 632 F.3d at 566.  The

privilege attaches when

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his
> capacity as such, (3) the communications relating to that purpose, (4) made in
> confidence (5) by the client, (6) are at his instance permanently protected (7) from
> disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets, citation, and quotation marks omitted).  The privilege extends to

electronic versions and preliminary drafts, *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127,

139-40 (E.D. Mich. 2009) (citations omitted), as well as communications with "third parties who

have been engaged to assist the attorney in providing legal advice."  *Richey*, 632 F.3d at 566

(footnote omitted).  If the advice sought from the professional legal advisor is not legal advice,

however, the privilege does not apply.  *Richey*, 632 F.3d at 566 (citation omitted); *accord id.* at 566

n.3 ("What is vital to the privilege is that the communication be made in confidence for the purpose

of obtaining *legal* advice *from the lawyer*." (citation and quotation marks omitted)).

Attorney-client privilege belongs solely with the client, and only he may waive it.  *In re*

*Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (citations omitted).  Once a client waives

the privilege, the waiver applies to "all other communications relating to the same subject matter."

*Id.* (citation and quotation marks omitted); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100

(9th Cir. 2010) ("[d]isclosing a privileged communication . . . results in waiver as to all other

communications on the same subject.").  This breadth of waiver prevents a party from employing the

privilege as both a sword and a shield during litigation; "that is, it prevents the inequitable result of a

party disclosing favorable communications while asserting the privilege as to less favorable ones."

*Id.* at 1372 (citations omitted).

### B.    Discussion

Plaintiffs do not dispute that the four documents, which include a request to OLC for legal

drafting services and subsequent attorney-client communications regarding those services, qualify as

attorney-client privileged communications, (*see* Jt. Letter 5).  The court agrees that OLC has made a

1    *prima facie* showing that the documents reflect confidential communications between a client and

2    counsel for the purpose of obtaining or providing legal advice. *See* Cal. Gov't Code § 10207(a)

3    (providing that "[t]he Legislative Counsel shall maintain the attorney-client relationship with each

4    Member of the Legislature with respect to communications between the member and the Legislative

5    Counsel"). However, Plaintiffs argue that since they were able to obtain a copy of the July 24, 1992

6    OLC amendments, OLC has thereby waived the privilege as to all four documents covering the same

7    subject matter. (Jt. Letter 5.)

8            According to OLC, the July 24, 1992 document consists of "a list of the textual changes that

9    were later made by the July 28, 1992 amendment to SB 2050." OLC made the document public

10   when the legislation amending SB 2050 was introduced. (Jt. Letter 8.) At the hearing, OLC counsel

11   clarified that the July 24, 1992 document is not itself privileged, but that OLC included it on its

12   privilege log merely because it was physically attached to a document containing the July 22, 1992

13   version of the amendment which includes handwritten attorney notes. As Plaintiffs correctly note,

14   "a party waives attorney-client privilege over communications if it discloses other otherwise

15   privileged communications concerning the same subject matter." (Jt. Letter 5 (citing *Weil v.*

16   *Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).) However, the July 24,

17   1992 document in Plaintiffs' possession does not include any information reflecting the process by

18   which OLC drafted the amendment at Senator McCorquodale's request. More importantly, it does

19   not include any attorney-client privileged communications. Instead, it is the version of the OLC-

20   drafted amendment to SB 2050 that was distributed to legislative officials in the process of

21   introducing the amendment. (Jt. Letter 8.) Simply put, there has been no disclosure of any

22   "privileged communications" that would result in waiver of the privilege as to other

23   communications. The court agrees with OLC that the public disclosure of a document containing

24   the July 24, 1992 OLC amendments does not waive the attorney-client privilege for all

25   communications relating to those amendments "any more than the filing of a pleading in court

26   waives all attorney-client communications regarding the substance of that pleading." (Jt. Letter 8.)

27           It is important to note that the concerns underlying the doctrine of waiver of the attorney-

28   client privilege are not present here. The Ninth Circuit has noted that the principal purpose of the

United States District Court
For the Northern District of California

5

1   doctrine of waiver of the attorney-client privilege "is to protect against the unfairness that would

2   result from a privilege holder *selectively disclosing* privileged communications to an adversary."

3   *Tennebaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) (emphasis added).  In other

4   words, "attorney-client communications may not be used both as a sword and a shield" in litigation.

5   *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  Here, the disclosure of the

6   July 24, 1992 OLC amendments was not a selective disclosure made by a party to secure an

7   advantage in litigation.  *See Hernandez*, 604 F.3d at 1100 (holding attorney-client privilege waived

8   where plaintiff disclosed communications in opposing summary judgment motion); *see also Weil*,

9   647 F.2d at 23 (holding privilege waived where defendant disclosed communications to defeat claim

10  that it acted with scienter).  Plaintiffs make an unsupported argument that this lawsuit challenges

11  discrimination by the State of California, and thus Defendant Bonham is "standing in for other

12  elements of the State of California including the OLC and its legislative clients."  (Jt. Letter 5.)

13  However, OLC is not a party to this litigation.  Moreover, the "disclosure" highlighted by Plaintiffs

14  did not involve attorney-client privileged communications, but was instead the distribution of

15  proposed amendments for the legislature's consideration.  The court concludes that there was no

16  waiver of the attorney-client privilege as to the four disputed documents.

### III.  Conclusion

18      For the above reasons, Plaintiffs' request for an order compelling the production of

19  documents withheld by OLC on the basis of the attorney-client, legislative, and official information

20  privileges is DENIED.

21

22      IT IS SO ORDERED.

23

24  Dated: March 8, 2013

25                                                          IT IS SO ORDERED
                                                            _____
26                                                          DONNA M. RYU
                                                            United States Magistrate Judge

27

28

6