Stuart G. Gross (#251019)
(sgross@gross-law.com)
Jared M. Galanis (#238549)
(jgalanis@gross-law.com)
**GROSS LAW**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone:  (415) 671-4628
Facsimile:   (415) 480-6688

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **KEVIN MARILLEY**; **SALVATORE**; **PAPETTI**; **SAVIOR PAPETTI,** on behalf of themselves and similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**CHARLTON H. BONHAM**, in his official capacity,<br><br>**Defendant.** | Case No. 11-2418 (DMR)<br><br>**PLAINTIFFS' NOTICE OF ERRATA CONCERNING:**<br><br>**JOINT DISCOVERY LETTER DATED JANUARY 16, 2014** |

*(vertical left margin)* GROSS LAW / THE EMBARCADERO, PIER 9, SUITE 100 / SAN FRANCISCO, CA 94111

PLAINTIFFS' NOTICE OF ERRATA; CASE NO. 11-2418

1       Plaintiffs respectfully submit notice of the following errata in the Joint Discovery Letter,

2   dated <u>January 16, 2014</u>, Dkt. No. 321. The letter was incorrectly filed without the Exhibit A

3   referenced therein. Attached hereto as Exhibit 1 is the January 16th letter with the omitted

4   attachment.

5

6   DATED:  January 22, 2014                              Respectfully submitted,

7                                                          **GROSS LAW**

8

9                                                          _____*/s/ Stuart G. Gross*_____

10                                                         Stuart G. Gross (SBN 251019)
                                                                          sgross@gross-law.com

11                                                        **GROSS LAW**
                                                          The Embarcadero

12                                                        Pier 9, Suite 100
                                                          San Francisco, CA 941111

13                                                        (415) 671-4628
                                                          (415) 480-6688

14

15                                                        *Class Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**GROSS LAW**

The Embarcadero, Pier 9, Suite 100, San Francisco, CA 94111  t 415.671.4628  f 415.480.6688
www.gross-law.com

January 16, 2014

*VIA ECF*
The Hon. Judge Donna M. Ryu
U.S. District Court for the Northern District of California
1301 Clay Street, 3rd Floor
Oakland, CA  94612

**RE:     *DISCOVERY DISPUTE LETTER - Marilley v. Bonham; Case No. 11-cv-2418***

Dear Judge Ryu:

In accordance with this Court's Standing Orders, the parties submit this joint letter requesting the Court's guidance regarding a discovery dispute. Plaintiffs' Motion for an Award of Attorneys' Fees and an Award of Costs is set for a hearing on Thursday, February 27, 2014. Defendant's Response to that Motion was just filed on Friday January 10, 2014, and accordingly Plaintiffs' Reply to Defendant's Response is due by Friday January 24, 2014.  Given the nature of the discovery dispute between them, and the aforementioned briefing and hearing schedule, Plaintiffs intend to file a motion seeking adjournment of the due date of their Reply until such time that the discovery dispute that is the subject of this letter is resolved and, in the event that the Court orders them produced, Plaintiffs have had a reasonable opportunity to review the requested billing records of Defendant.

## I.     PLAINTIFF'S REQUEST FOR RELIEF:

Plaintiffs request that the Court order Defendant to respond to the request for production of documents, attached hereto as **Exhibit A** and served on November 25, 2013**,** which requests Defendants' billing records and the current resumes of the attorneys' listed therein ("D's Billing Records RFPDs"), or, in the alternative, re-open discovery for the limited purpose of Plaintiff's service of the D's Billing Records RFPDs. The records sought are indisputably relevant given the arguments made by Defendant in his opposition to Plaintiffs' Motion for an Award of Attorneys' Fees and an Award of Costs ("Ps' Fee Motion") and good cause supports Plaintiffs' request that Defendant be required to produce them, notwithstanding the previous close of discovery.

### A.     Procedural Background

Contrary to Defendant's claim, Plaintiff did not refuse to participate in negotiation of their fees. Rather, the only thing Plaintiffs refused to do is provide detailed billing records to Defendant, *unless* it appeared that the parties were in the same ballpark, as Plaintiffs very

reasonably believed that if settlement was not probable, all that giving Defendant Plaintiffs' detailed records would do is provide Defendant a lead on opposing Plaintiffs' request. Ultimately, after Defendant's counsel, quite interestingly in light of Defendant's arguments herein, ***indicated that Plaintiffs' requested total fee number did not seem out of line when compared to his own billings***, Plaintiff provided Defendant a detailed lodestar report, to which Plaintiffs received no response.[1]

On November 25, 2013, when, based on Defendant's silence, it became clear that the parties were not likely to resolve the fee issue, Plaintiffs served Defendant via email (the agreed upon method of service of discovery requests) with the D's Billing Records RFPDs which contained just two requests: (1) a request for Defendant's billing records; and (2) the current resumes of all of the attorneys listed on those billing records. Defendant's suggestion that Plaintiff served the discovery so as to interfere with Defendant's holiday plans is baseless; it was merely the natural result of the sequence of events. Moreover, there is little reason why Defendant would have needed the entire thirty-three days to respond to the two requests contain in the D's Billing Records RFPDs; thus, if Defendant's counsel were concerned with their holiday plans, the simple solution would have been to have responded to the requests early, or, if answering the two requests and going on their planned vacations was too burdensome, requesting an extension. Instead, Defendants just ignored the requests.

Plaintiff did not hear anything from Defendant concerning the requests until Defendant's counsel sent the undersigned an email on December 23, 2013, one week before Defendant's responses were due and on the eve of an extended vacation by Defendants' counsel. In a follow-up phone call Defendant's counsel expressed his position that the requests were improper on the ground that discovery was closed and that Plaintiffs were not entitled to the documents irrespective of the timing of the requests. In consideration of the imminent holiday and Defendant's counsel's planned vacation, Plaintiffs agreed that Defendant would not required to formally respond to the requests to preserve his objections thereto, that Plaintiffs would provide Defendant authority supporting their entitlement to documents requested. In exchange, Defendant's counsel agreed: (1) he would review that authority when he returned to the office on January 6, 2014; (2) if the parties did not reach agreement they would work diligently to get a joint letter to the Court on the issue by January 7, 2014; and (3) "[i]f there is to be any production by agreement or by court order, we will work through the logistics to find a mutually agreeable and reasonable way to produce documents for whatever use [Plaintiffs] may want or need them for use in [Plaintiffs'] reply brief on the fee motion[, which] may involve shortening time on production time or extending time for the reply filing, or both." On January 6, 2014, Defendant's counsel emailed the undersigned to communicate Defendant's position that Plaintiffs' provided authority did not authorize the requests and that, therefore, the matter was resolved. In response to the undersigned's request that the parties therefore work to get a joint letter to the Court by January 7, 2014, Defendant refused claiming that the necessary meet and confer had not occurred. While disputing this position, the undersigned agreed to conduct a meet and confer with Defendant's counsel, which occurred by phone on January 9, 2014.

In that call Defendant's counsel indicated that he would be challenging the amount of time based on which Class Counsel sought an award of fees, but that (1) Plaintiffs were barred

---

[1] If the Court wishes, Plaintiffs are happy to provide copies of correspondence reflecting this process.

from serving the D's Billing Records RFPDs because discovery was closed and (2) Plaintiffs were not entitled to re-open discovery for the purpose of discovering these records. Plaintiff responded by stating that because Defendant was challenging the reasonableness of the time based on which Class Counsel sought an award of fees, Defendants' billing records were discoverable. As to whether Plaintiffs were entitled to receive these documents in response to the D's Billing Records RFPDs or in response to requests served after the Court issued an order formally re-opening discovery, the issue was largely academic in light of Defendant's refusal to produce the requested documents absent a court order. As explained to Defendant's counsel, Plaintiffs served the request on <u>November 25, 2012</u> in an effort to efficiently dispense with the issue in a manner that was expeditious, would not disrupt the agreed upon briefing schedule on Ps' Fee Motion, and that would not involve the unnecessary expenditure of judicial and party resources. Because Defendant refused to respond to the request and Plaintiffs agreed that now waiver was effected as a result, Plaintiffs were forced to seek the Court's involvement and there would be no legally significant difference between an order finding that the D's Billing Records RFPDs were proper and should be responded to and an order reopening discovery for the purpose of allowing Plaintiffs to serve the D's Billing Records RFPDs. As expressed to Defendant's counsel, it was very unfortunate that, given Defendant's positions on the relevant issues, the matter did not get teed up for resolution by the Court at some point during the previous month and half since the request was served.

**B.      Plaintiffs Are Entitled to Discovery of Defendants' Billing Records**

Defendant's have opposed the Fee Motion on bases that include a challenge to the reasonableness of the rates and hours expended by Class Counsel. As discussed below, this is sufficient under the law to make Defendants' billing records relevant and discoverable, and provides good cause for the Court to reopen discovery and compel Defendant's production of the records if he continues to refuse to do so. Indeed, the fact that, on the one hand, Defendant has challenged the reasonableness of Class Counsel's requested fees but, on the other hand, have not only failed to submit their billing records in support of such opposition but have vigorously resisted their production accentuates the records' discoverability and relevance.

Ninth Circuit law supports both the relevancy of opposing counsel's billing records in the context of a motion for attorney's fees and the appropriateness of reopening and compelling discovery, if necessary to ensure that such records are produced. *See, e.g. Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. Cal. 2013) (in remanding back to the district court for a redetermination of the reasonableness of attorneys fees the court found that opposing counsel's billing records may be relevant to a determination of the reasonableness of the prevailing party's hours); *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (noting that opposing counsel's billing records are "useful" in determining the amount of a reasonable fee); *Real v. Continental Group, Inc.*, 116 F.R.D. 211 (N.D. Cal. 1986) (in granting plaintiff's motion to compel discovery regarding defendant's billing records the court held "… the hours spent on this case, whether it be by the plaintiff's counsel or the defendant's counsel, is relevant information"); *Riker v. Distillery*, No. 2:08-cv-0450, 2009 U.S. Dist. LEXIS 75508 (E.D. Cal. Aug. 12, 2009) (finding opposing counsel's billing records relevant and compel discovery relating thereto); *see also, e.g., Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1574-75 (11th Cir. 1985) (holding that it was an abuse of discretion for the district court to deny plaintiff

the discovery of time and billing records of opposing counsel especially when opposing counsel challenges prevailing party's claims at every stage they cannot then complain that fee awards should be less because the case could have been tried with less resources and hours); *Stastny v. Southern Bell Tel. & Tel. Co.*, 77 F.R.D. 662 (W.D.N.C. 1978) ("In a contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time that the opposition found necessary to prepare its case would be probative"); *Serricchio v. Wachovia Sec., LLC*, 258 F.R.D. 43, 46 (D. Conn. 2009) (the court noted that "it may be proper to permit a prevailing party to take discovery of its opponent's billing records where that opponent claims that the hours plaintiff's counsel expended were grossly excessive"); *Pollard v. E.I. DuPont De Nemours & Co.*, No. 95-3010, 2004 U.S. Dist. LEXIS 6345 (W.D. Tenn. Feb. 24, 2004).

It is true—and telling—that Defendant does not offer examples of their own time spent on tasks, such as the parties' cross motions for summary judgment where each side was allowed precisely the same pages of briefing, in attacking Plaintiffs' request for fees. *See* CEB, Attorney's Fees, §14.36 (Richard Pearl, 2008) ("As a practical matter, fee opponents tend to submit their own fees when they are significantly less than the claimant's and object to discovery requests when they are greater."). Rather, Defendants' argue that the request is as "grossly out-of-scale" in reference to fees sought in other unrelated and factually distinguishable litigation. Contrary to Defendant's suggestion below, this does not make their billing records irrelevant, but rather heightens their relevancy. For example, while Defendant makes much in his Opposition to the fact that there was no trial in this action but in these other unrelated case there were trials, the reality is that both sides here always anticipated that this action would be resolved on summary judgment. Thus, how much time Defendants spent on their <u>unsuccessful</u> summary judgment briefing is potentially quite probative of the reasonableness of the time Plaintiffs spent on their <u>successful</u> summary judgment. *See generally Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. Cal. 2001) (recognizing "the possibility that the prevailing party's attorney -- who, after all, did prevail -- spent more time because she did better work"). Defendant fundamentally desires to challenge Plaintiffs' requested fees abstracted from the instant case. Only that way can Defendant support the hyperbolic claims in his opposition to Plaintiff's fee motion. Plaintiffs are only asking for limited discovery so as to ground the discussion in "the work performed and the context of the case." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). This is especially appropriate given Defendant's counsel's representation that Plaintiffs' total requested fees were not out of line with his own.

**C.**     <u>**Should the Court Deem Discovery Must be Formally Re-Opened In Order For Plaintiffs to Gain the Discovery Sought, Good Cause Supports Doing So**</u>

The opportunity to re-open discovery lies solely within the district court's discretion, *see Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1171 (9th Cir. 2010), and request to do so should be granted if the party has established good cause to justify the additional discovery and that such discovery could not have been accessed during the discovery period. *See New York v. Micron Tech., Inc.*, No. C 06-6436, 2009 U.S. Dist. LEXIS 1624, at *18-19 (N.D. Cal. Jan. 5, 2009). Courts weigh six factors in determining if good cause is met: (1) whether trial is imminent; (2) whether the request to re-open discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court, (5) the foreseeability of the need for additional

discovery in light of the time allowed for discovery; and (6) the likelihood that the discovery will lead to relevant evidence. *See Tyco Thermal Controls LLC v. Industrials*, No. C 06-07164, 2010 U.S. Dist. LEXIS 65431 (N.D. Cal. June 8, 2010); *accord, e.g., Henderson v. Peterson*, No: C 07-2838, 2011 U.S. Dist. LEXIS 13620, 6 (N.D. Cal. Feb. 3, 2011); *Micron Tech.*,  2009 U.S. Dist. LEXIS 1624, at *19.

Should the Court deem that re-opening discovery is a necessary first step for Plaintiffs to gain the records sought, this standard is met. First, trial is clearly not imminent.  Second, although Defendant opposes the request, that opposition alone is insufficient. *Accord, e.g., Pharm., Inc. v. Am. Pharm. Partners, Inc.,* No. CV 05-776, 2008 U.S. Dist. LEXIS 73293 (E.D.N.Y. Sept. 24, 2008).  Third, Defendant would not experience any prejudice if discovery was re-opened, much less the prejudice necessary to deny Plaintiffs' motion. The limited discovery of Defendant's time and billing records will have virtually no impact on Defendant. The information sought is information that Defendant's counsel has indicated could be quickly gathered. Furthermore, the requested records only mirror what Plaintiffs have already provided to Defendants. Fourth, Plaintiffs were clearly diligent in obtaining discovery during the discovery period in this action. Plaintiffs engaged in extensive fact discovery on all of Plaintiffs' claims and Defendant's defenses. Plaintiffs did not previously seek discovery of these records because they were not previously relevant. Fifth and relatedly, foreseeability is not a factor here because these records were not relevant until: (1) Plaintiffs prevailed on the Privileges and Immunities claim at summary judgment; (2) the parties were not able to reach a resolution of the fee issue; and (3) Defendant placed the reasonableness of Plaintiffs' fees at issue. Furthermore, complete and comprehensive time and billing records did not even exist until after the case was resolved; thus, even if Plaintiffs had requested the time and billing records available during the discovery period, Plaintiffs would still have had to move to re-open discovery at the present time in order to obtain a comprehensive set of records. Moreover, in fact, Plaintiffs did seek proactively to gain these records earlier. The reason that Plaintiffs are now in the position that they must seek the assistance of the Court is that Defendant chose not only to forego responding to the D's Billing Records RFPDs but also that his counsel waited until the last possible moment before leaving on a two week vacation to inform Plaintiffs that Defendant was not going to respond to the request. Indications he gave at the time that he would work hard to get the issue expeditiously resolved upon his return appear in retrospect to have been more a delay tactic than anything. In any case, courts have taken the position that the appropriate time to move for the discovery relating opposing counsel's billing records is after opposing counsel has responded to the prevailing party's fee petition or after having moved for fees themselves. *See, e.g., Hayden v. Blue Cross & Blue Shield*, No. 1:10-cv-050, 2012 U.S. Dist. LEXIS 2060 (D.N.D. Jan. 9, 2012); *Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 668 (W.D.N.Y. 2011). Thus, under this formulation, Plaintiffs could not have sought the discovery until now. Finally, all issues regarding relevancy, have been dealt with above and it is Plaintiffs' position that Defendant's billing records are clearly relevant in this matter.

Thus, for foregoing reasons, Plaintiffs request that the Court either order Defendant to respond to the D's Billing Records RFPDs or order that discovery is re-opened for a limited purpose of service of these requests upon Defendant. In either case, Plaintiff's further request that the Defendant be ordered to respond to the requests within one week of the order. Plaintiffs will file a separate motion to request an according modification of the fee petition briefing

schedule.

## II.    DEFENDANT'S VIEW OF HOW TO RESOLVE THE LEGAL DISPUTES

Although Plaintiffs' version of the background is inaccurate, certain legal disputes must now be resolved.[2]  Plaintiffs offer the disputes in reverse order, though.  Discovery closed by court order on December 14, 2012.  Plaintiffs propounded discovery on November 25, 2013.  The first question is whether Plaintiffs are permitted to re-open discovery.  Only if that question is answered affirmatively must this Court proceed to the next question of what aspects of Plaintiffs' desired discovery are appropriate, if any.

### A.    Plaintiffs Have Offered No Compelling Reasons Why They Should Be Permitted to Conduct Rare Fee Motion Discovery.

Plaintiffs' counsel sought an extension of time to file his fee motion, which Defense counsel negotiated in good faith.  Plaintiffs obtained more than a month from the entry of judgment, and almost two months from the October 16, 2013 summary judgment order, to prepare a fee motion.  In negotiating that extension, Plaintiffs never mentioned a plan for fee motion discovery.  Plaintiffs' counsel stated both to this Court and counsel that the need for additional time was to permit time to resolve the fee petition through settlement.

After this Court enlarged the fee motion schedule, Plaintiffs' counsel informed Defense counsel that he would not negotiate his fee claim.  Plaintiffs then served fee motion discovery.  It appears the extension was not for settlement, but was to enlarge time to conduct discovery.  Indeed, rather than sending any type of detailed billing records, after the extension of time was assured, Plaintiffs' counsel provided only a small chart summarizing in a few lines by timekeeper the total hours billed and the requested hourly rate.  Although there was no way to meaningfully analyze such a small data summary, Defense counsel (undersigned) did acknowledge in conversation that the total was about what he expected.  *Of course, that was a cordial way of saying that the minimal lodestar summary appeared as inflated in hours and rates as he had feared it would be.*  Plaintiffs then served discovery on November 25 (just before Thanksgiving) making Defendant's responses due (had discovery been open) the day after Christmas.  This due date was also in the middle of the window for Defendant to prepare his opposition to Plaintiffs' fee motion.  It is difficult to see the scheduling as unintentional.  No new information about the need for discovery surfaced between this Court's October 16 summary judgment ruling and Plaintiffs'  November 25 discovery service attempt.

### 1.    There is No Basis to Reopen Discovery

With the 1993 amendments to the federal rule governing fee motions under statutes like 42 U.S.C. § 1988, the advisory committee noted that fee motion discovery should occur only "[o]n rare occasion."  Fed. R. Civ. P. 54(d), Advisory Comm. Notes on 1993 Amendments.

---

[2] The facts and procedural history are captured in the contemporaneous meet and confer confirmation correspondence.  Counsel for Defendant respectfully requests permission to provide this meet and confer correspondence to the Court in keeping with Judge Ryu's Standing Order at paragraph 10 ("no other exhibits [other than the disputed discovery request] shall be submitted without prior approval by the court").

Plaintiffs' own argument confirms the rarity of such discovery. Despite the abundance of fee motions in this district, Plaintiffs cite just *one* case from this district that considered a form of the information Plaintiffs seek – and that case *pre-dates* the amendments (and notes) to Rule 54(d).

Further, although Defendant disputes that this was complex litigation, Plaintiffs' fee motion consistently claims that it was. Notably, the *Manual for Complex Litigation* used in the Northern District cautions against the use of fee motion discovery. "Discovery in connection with fee motions should rarely be permitted, but may be advisable where attorneys make competing claims to a settlement fund designated for the payment of fees." *Manual for Complex Litigation* § 14.224 (4th ed Federal Judicial Center 2004). The only exception recognized is not at issue here. No fee motion discovery is allowed.

Plaintiffs' also cite Richard Pearl's treatise *California Attorney Fee Awards.* Plaintiffs fail to acknowledge that the treatise has no bearing on fee motions in *federal* court under *federal* law.[3] The treatise addresses fee awards under *state* law: "This book's primary focus is on fee awards under California law. [A] complete review of federal authority is beyond the scope of this book." *California Attorney Fee Awards*, Richard M. Pearl, CEB 2013, § 1.1. Still, even Richard Pearl concurs that in federal cases, fee motion discovery is rare. "Under federal law, discovery on fee matters is rarely permitted." *California Attorney Fee Awards*, Richard M. Pearl, CEB 2013, § 11.54.

Plaintiffs do not offer any reason that their fee motion in this case is the "rare occasion" where discovery should be permitted. Instead, they suggest analyzing good cause under Fed. R. Civ. P. 16 to change the scheduling order. Plaintiffs fail to note that the good cause standard of Rule 16 "primarily considers the diligence of the party seeking" to amend the scheduling order. *Silverman v. City & Cnty. Of San Francisco*, No. 11-1615, 2013 WL 4516763 at *3 (N.D. Cal. Aug. 23, 2013) (internal quotation omitted). "If the party seeking the modification was not diligent, the inquiry should end." *Id.* It is not only Plaintiffs' diligence "in conducting discovery" that is at issue but their diligence "in seeking to modify the Court's … scheduling order." *Id.* And "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Atwell v. City of Surprise*, 440 Fed. Appx. 585 (9th Cir. 2011) (internal quotation omitted).

Plaintiffs could have moved to reopen discovery in October, November, or even December. Plaintiffs did not. Instead, they served discovery requests on Defendant even though discovery was closed. That may have been carelessness; even if it was, that does not provide a basis to re-open discovery now. Plaintiffs' choice to serve that discovery *after* the parties had stipulated to an extended schedule for Plaintiffs' opening brief, and without any discussion that Plaintiffs planned to serve discovery, and *on a date* that would impinge on Defendant's opposition briefing, looks far more like bad faith than like diligence in pursuing a change to this Court's scheduling order.

Significantly, Defendant would be prejudiced by re-opening discovery. Defendant has already opposed Plaintiffs' fee motion on the evidence submitted by Plaintiffs. Opening

---

[3] Plaintiffs quote Mr. Pearl's opinion of state court litigators from his treatise at § 14.36 of the 2008 version. This quoted opinion can actually be found in the current version (2013) of the treatise at § 11.56.

discovery now and compelling production will result in a whole new and second round of briefing.  It will also delay resolution of Plaintiffs' fee motion which, as Plaintiffs know, Defendant intends to appeal seek to consolidate with the merits appeal at the Ninth Circuit. Further, the burden Plaintiffs seek to impose on Defendant here is not "inherent in litigation," as Plaintiffs imply.  As noted, discovery related to fee motions is exceedingly rare and, as discussed below, there is no likelihood that the discovery will lead to relevant evidence.

### 2.   There Is No Need to Re-open Discovery

Plaintiffs' contend this is a rare case where fee motion discovery should be permitted because Defendant has challenged the reasonableness of how many hours Plaintiffs' expended in litigating this case and the rates claimed by Plaintiffs' counsel.  On a fee motion, there are only two basic factors to evaluate – the number of hours expended and the hourly rate.  It is therefore likely that nearly every fee motion opposition challenges the hours, rates or both.  If such a routine challenge were enough to transmute a case to the *rare* instance where fee motion discovery is permissible, the prohibitions against fee motion discovery would be *meaningless*.

Defendant's opposition to Plaintiffs fee motion underscores why fee motion discovery is *not necessary* here.  Defendant *does not* put its own fees at issue anywhere in its opposition by, for example, stating that defense counsel did the same task in fewer hours than Plaintiffs' counsel.  Many of the challenges to the reasonableness of the number of hours relate to tasks that only Plaintiffs' counsel engaged in – such as preparing the complaint, or the amended complaints.  Even if discovery were permitted into Defendant's billing records, there would be nothing probative of the reasonableness of Plaintiffs' claimed hours – because Defense counsel did not undertake those tasks.  And even where Defendant offers an expert opinion about how many hours Plaintiffs counsel should have taken to complete a task that might have some corollary in defense counsel's billings, such expert opinion was not grounded in Defense counsel's billings.  Defendant's expert did not review Defense counsel's billings.

Similarly, as to hourly rates, Defendant does not takes the position that Plaintiffs' counsel's hourly rates are excessive because defense counsel's rates were lower.  Defendant argues in its opposition that Plaintiffs' counsel's claimed hourly rates lack evidentiary support and are not consistent with rates in the relevant community.

A fee motion should not spawn a second round of litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  If a need for fee motion discovery arose every time a defendant challenged the number of hours expended or the hourly rates requested by a fee applicant, this Supreme Court admonition would have no meaning.  There is nothing unusual or "rare" about the fee dispute in this case, and no discovery is needed.

### B.   Because of the Attorney-Client Privilege, Defendant Cannot Be Compelled to Produce the Billing Records That Plaintiffs Seek

Even if discovery is permitted, no Ninth Circuit or Northern District authority compels productions of Defendant's billing records otherwise protected by the attorney-client privilege.

In *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213-14 (N.D. Cal. 1986), billing records were not discoverable because they revealed the nature of services provided, information protected by the attorney-client privilege.  The court found, however, that defense counsel's rates were not privileged and were relevant to plaintiffs' fee claim because both plaintiffs' counsel and defense counsel were private law firm members.  "[T]he hourly rates of defendant's counsel, a San Francisco law firm, should shed some light on the reasonableness of the plaintiff's trial counsel's rates because the latter attorneys are also members of a San Francisco law firm."  *Id.*

Here, Defense counsel works for a government agency, and government lawyer rates will not tend to shed light on the market rate of law firms.  Indeed, in *Buckheit v. Dennis*, No. 3:09–cv–05000–JCS, 2013 WL 57716 (N.D. Cal. January 3, 2013) government lawyers (counsel for the County for San Mateo) were awarded $190 per hour under 42 U.S.C. §1988 for their work in the Northern District – their billable government rate which was recognized as well below the market rate for private law firms in the Northern District market.  *Id.* at *11

Defense counsel's hours and rates were also not privileged and relevant because defense counsel had implicated its own hours by characterizing its litigation of the case as "economical." *Real*, 116 F.R.D. at 213.  As described above, no such implication by defense counsel exists here.  Also, the *Real* case from 1986 contains dicta typical of cases that *preceded* the 1993 amendments to the fee motion rule of Fed. R. Civ. P 54(d).  *See, e.g., Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986) (stating in dicta that information about defendant's fees, although not part of the record, would have been helpful).  By contrast, in November of 1993, the Central District found that the amount of time defense counsel spent litigating a case under 42 U.S.C. §1983 was "irrelevant" to determining the reasonable number of hours plaintiffs' counsel could claim in its prevailing party fee motion.  *Dease v. City of Anaheim*, 838 F.Supp. 1381, 1383 (C.D. Cal. 1993).

The Ninth Circuit's modern approach treats hours comparisons with caution.  This theme first emerged in *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).  In *Ferland*, the Ninth Circuit recognized that a comparison of hours between plaintiffs' counsel and defense counsel can be *unreliable* in both small and large cases.  Accordingly, the Ninth Circuit cast significant doubt on the utility of any comparisons of hours:

> [O]pposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on.

*Id.* at 1151

Since *Ferland*, the Ninth Circuit has issued opinions regarding relevance that go in both directions.  In *Democratic Party of Washington v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004), for example, the Ninth Circuit already possessed each side's billings records and found a comparison of hours was useful.  Alternatively, in *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) in a 42 U.S.C. § 1988 fee petition, the Ninth Circuit declined to consider the number of hours defendant expended as proof that a fee claimant's hours were excessive.

Most recently, in another 42 U.S.C. § 1988 fee petition in *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202-03 (9th Cir. 2013), the Ninth Circuit affirmed its "maybe" stance on relevance first articulated in *Ferland*.  The Ninth Circuit remanded the fee petition to the District Court and *reminded* the District Court that it did not need to consider opposing counsel's billing records if it did not want to.  "Although opposing counsel's billing records may be relevant… those records are not dispositive. [citations omitted.]  Therefore, the district court has discretion not to rely on them."  *Id.* at 1202.

Here, plaintiff seeks Defendant's billing records.  Plaintiffs offer no Ninth Circuit or Northern District authority compelling the production of billing records or attesting to their discoverability. (*Cf.* plaintiffs' claim in this letter that "Ninth Circuit law supports … the relevancy of opposing counsel's billing records in the context of a motion for attorney's fees ….").  In fact, plaintiffs' reliance on *Real* for that claim is misplaced.  *Real* prohibited the production of billing records because compelling their production would violate the attorney-client privilege.  *Real* also preceded the 1993 amendment making clear that such discovery is only permitted on rare occasions – and plaintiffs offer no explanation of why this is a such a rare case.  And *Real* expressly stated that discovery of hourly billable rates was meaningful only where both sides were private attorneys – a situation that does not exist here.

Lacking Ninth Circuit or Northern District authority supporting their desire to compel production of defendant's billing records, Plaintiffs offer the Eastern District case of *Riker v. Distillery*, No. 2:08–cv–0450 MCE JFM, 2009 WL 2486196 (E.D. Cal. August 12, 2009).  But *Riker* relied on *Real* to establish the relevance of the records.  This was improper because *Real* has now been replaced by the Ninth Circuit *Ferland* standard and the 1993 Advisory Committee Notes to Rule 54(d).  Nonetheless, the Eastern District still properly observed that defense counsel's billing records were *not discoverable*.  *Id.*  The request for defendant's billing records *was denied*.  Instead, plaintiff was granted a much smaller subset of the records requested and defendant was ordered to provide within 15 days "an itemized statement of the number of hours billed…without including the nature of services rendered." *Id.* at *2.

The Eastern District's decision is not binding on this Court, and the *Riker* case does not change any analysis of Plaintiffs' desire to compel production of defendant's billing records.  Whether relevant or not, and the Ninth Circuit has held that billing records might not be relevant, the request for billing records is prohibited by the attorney-client privilege.

## C.    Resolution

Should the Court rule that any type of production is required under the law, Defendant anticipates that additional and very limited additional briefing could be warranted.  However, Defendant respectfully suggests that the law does not permit discovery to be re-opened.  Even if it did, the law does not permit the production of billing records as requested by Plaintiffs.  Defendant respectfully suggests that this fee motion discovery dispute be resolved by a finding that no further action need be taken by any party, that Plaintiff should file his fee motion reply on January 24, 2014 and that the hearing on the fee motion, already extended through stipulation, should proceed as scheduled on February 27, 2014.

Respectfully submitted,

*/s/Stuart G. Gross*

STUART G. GROSS
Attorney for Plaintiffs and Class


*/s/ Gary Alexander*

GARY ALEXANDER
Deputy Attorney General
Attorney for Defendant

# EXHIBIT A

Stuart G. Gross (#251019)
(sgross@gross-law.com)
Jared M. Galanis (#238549)
(jgalanis@gross-law.com)
**GROSS LAW**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone:  (415) 671-4628
Facsimile:   (415) 480-6688


*Class Counsel*


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


|  |  |
|---|---|
| **KEVIN MARILLEY** and **SALVATORE PAPETTI** on behalf of themselves and similarly situated,<br><br>          **Plaintiff,**<br><br>      **v.**<br><br>**CHARLTON BONHAM,** in his official capacity,<br><br>          **Defendant.** | **Case No. 11-cv-2418 (DMR)**<br><br>**CLASS PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHARLTON BONHAM** |

In accordance with Federal Rules of Civil Procedure Rules 26 and 34, Plaintiffs Kevin Marilley, Salvatore Papetti, and Savior Papetti, on behalf of themselves and other members of the Class, by counsel, hereby request Defendant Charlton Bonham, in his official capacity, to produce documents to Gross Law, The Embarcadero, Pier 9, Suite 100, San Francisco, CA 94111, as specified below.  Documents produced by Defendant must adhere with the Definitions set forth below and conditions of Rule 34 of the Federal Rules of Civil Procedure.  Defendant has thirty (30) days from the date of service to comply with the specified production.

## DEFINITIONS

The following definitions shall apply to all discovery requests:

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. Handwritten or other notations of any kind on a copy, including inter alia "Post-It" Notes, render it a non-identical copy. The term "document" includes communications.

2.      The term "communication" means any oral or written transmission or receipt of words or information, by whatever manner or means, directly or indirectly, regardless of how or by whom the communication was initiated, including without limitation: (i) any written contact by means such as letter, memorandum, telegram, telex, e-mail, instant message, or facsimile and (ii) oral contact by any means including face-to-face meetings and telephone. Communications with any entity include communications by or with its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

3.      The abbreviation "DFG" means the California Department of Fish & Game, which is now known as the California Department of Fish & Wildlife.

4.      The abbreviation "DFW" means the California Department of Fish & Wildlife.

5.      The term "State" means the State of California inclusive of all of its agencies, departments, divisions, offices, etc.

6.      The terms "you" and "defendant," including their possessives, refer collectively to

1   Defendant Charlton Bonham, in his official capacity, the DFG, the DFW and any agent or

2   employee thereof, including legal counsel.

3          7.      The terms "plaintiff" and "defendant" as well as a party's full or abbreviated

4   name or a pronoun referring to a party, including "you," mean the party and, where applicable,

5   its executives, directors, deputy directors, employees, partners, divisions, branches, regions,

6   offices, and agents. This definition is not intended to impose a discovery obligation on any

7   person who is not a party to the litigation.

8          8.      The term "person" is defined as any natural person or any legal entity, including,

9   without limitation, any business or governmental entity or association.

10         9.      The term "concerning" means relating to, referring to, applicable to, describing,

11   evidencing or constituting.

12         10.     The term "peculiar evil" has the meaning used by the Court on page 5 of its

13   October 3, 2011 Order (Dckt. No. 37).

14         11.     The term "active participation" when referring to a person's participation in a

15   fishery means directly and personally engaging in the harvesting of fish from the fishery.

16         12.     Identify (with respect to persons). When referring to a person, "to identify" means

17   to give, to the extent known, the person's full name, present or last known address, phone

18   number, and email address, and when referring to a natural person, additionally, the present or

19   last known place of employment. Once a person has been identified in accordance with this

20   subparagraph, only the name of that person need be listed in response to subsequent discovery

21   requesting the identification of that person.

22         13.     Identify (with respect to documents). When referring to documents, "to identify"

23   means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date

24   of the document; and (iv) author(s), addressee(s) and recipient(s).

25                           **INSTRUCTIONS**

26         1.      All references herein to Interrogatory Numbers refers to the Interrogatory

27   Numbers used in Plaintiff Salvatore Papetti's First Set Of Interrogatories To Defendant John

28   McCamman dated October 15, 2011 and the responses thereto.

---

CLASS PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT;
CASE NO. 11-2418                                               2

2.      This Request for Production of Documents must include documents known to you, or in your possession, custody, or control from any source wherever situated, including but not limited to, any documents in the possession of your agents, employees, attorneys, investigators, consultants, and all persons acting on your behalf or under your control.

3.      If you do not possess documents to respond to a request, you are under a duty to make a reasonable effort to obtain such information or documents. You have an affirmative duty to investigate.

4.      If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter.

5.      Each request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of you.  In addition, each request should be considered as including a request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of difference in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

6.      All documents produced in response to this request shall be produced in their entirety notwithstanding the fact that portions thereof may contain information not requested.

7.      The documents produced in response to this request shall include all attachments and enclosures.

8.      With respect to any document requested that was once in your possession, custody, or control, but which no longer is, please indicate the date the document ceased to be your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

9.      If you object to part of any Request, please state the objection and the basis of the objection and furnish answers and documents responsive to the remainder of the Request.

10.    All documents or portion of documents called for by these Requests, for which you claims a privilege or statutory authority as a ground for nonproduction shall be identified as follows:

      a.    the place, date, and manner of recording or otherwise preparing the document;

      b.    the name and title of the sender;

      c.    the identity of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the documents;

      d.    the identity and title, if any, of the person or persons supplying your attorney with the information requested above;

      e.    the identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading, or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

      f.    type of document;

      g.    subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

      h.    factual and legal basis for claim, privilege, or statutory or regulatory authority which provided the claimed ground for nonproduction.

11.    If anything is deleted from a document produced, please state:  the reason for the deletion; the subject matter of the deletion; and the name of the person or persons who decided to delete such matter.

12.    All documents produced in response to these Requests for Production of Documents shall be segregated and identified by the discovery request to which they are primarily responsive.  Where required by a particular paragraph of these requests, documents produced shall be further segregated and identified as indicated in the paragraph.  For any documents that are stored or maintained in files in the normal course of business, such

documents shall be produced in such files, or in such a manner as to reserve and identify the file from which such documents were taken.

13.     References to the singular include the plural, and plural includes the singular.

14.     The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

15.     The use of the disjunctive form, e.g. "or," shall be considered to also include within its meaning the conjunctive form, e.g. "and," and vice versa.

16.     These Requests for Production are continuing in nature; if, after responding, you obtains or becomes aware of any further information or documents responsive to these Requests, a supplementary answer or production is required.  Fed. R. Civ. P. 26(c).

17.     Please produce each and all of the things in evidence, other than documents maintained in computerized data format, identified above on or before thirty days from the service of this request at the office of Gross Law, The Embarcadero, Pier 9, Suite 100, San Francisco, CA 94111, and permit the inspection, copying, and photographing thereof. Notwithstanding the above request, you may avoid a personal appearance on the date and place set forth above by furnishing on or before that date by submitting CD-Rom or DVD discs containing true and correct copies of all such documents, accompanied by a verification of an authorized representative or custodian of records that said copies are accurate and complete and constitute all documents responsive to these Requests.

18.     Please produce each and all of the things in evidence identified above that are maintained in computerized data format on or before thirty days from the service of this request by delivering CD-Rom or DVD discs containing true and correct copies of such documents at the office of Gross Law, The Embarcadero, Pier 9, Suite 100, San Francisco, CA 94111.

19.     Please produce all documents maintained in computerized data form, except those documents maintained in Microsoft Excel format or those that constitute reports from a database, in word-searchable PDF format, with each document a separate PDF file. An email and all of its attachments are to be considered a singe document, and should produced as a single PDF file, except to the extent an attachment is maintained in Microsoft Excel format. All documents



1   maintained in Microsoft Excel format should be produced in native format. All documents that

2   constitute reports from a database should be produced in Microsoft Excel format or as tab

3   delimited text.

4       20.    Please produce all documents with a sequential Bates numbers identify the

5   producing party.

6   **REQUEST FOR PRODUCTION OF DOCUMENTS**

7       The documents and things to be produced are described as follows:

8       1.    All billings records of the Office of Attorney General relating to the instant

9   action, including without limitation documents sufficient to show, per task by timekeeper, the

10  amount of time expended, a description of the work performed, the identity of the timekeeper,

11  and the rates which the Defendant and/or the DFW were charged.

12      2.    Current resumes for all attorneys whose time is reflected in the documents

13  produced in response to Request No. 1.

14

15  Date: November 25, 2013                      **GROSS LAW**

16

17

18                                    Jared M. Galanis (#238549)
    (jgalanis@gross-law.com)

19                                    Stuart G. Gross (#251019)
    (sgross@gross-law.com)

20                                    The Embarcadero
    Pier 9, Suite 100

21                                    San Francisco, CA 94111
    Telephone:  (415) 671-4628

22                                    Facsimile:  (415) 480-6688

23                                    *Counsel for Plaintiffs*
    *and the Class*

24

25

26

27

28

## PROOF OF SERVICE

I am over 18 years old and am not a party to the above case.  My business address is Gross Law, The Embarcadero, Pier 9, Suite 100, San Francisco California, 94111.  On this day, I served the following document(s) in the manner described below:

**CLASS PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHARLTON BONHAM**

<u>X</u>      **VIA EMAIL:**  My email address is jgalanis@gross-law.com.  I am readily familiar with this firm's practices for causing documents to be served via email.  Following that practice, I caused the forgoing document(s) to be emailed to the addresses below.

| | |
|---|---|
| Gary Alexander<br>Elaine Meckenstock<br>Office of Attorney General<br>455 Golden Gate Avenue, Suite 13000<br>San Francisco CA 94102<br>gary.alexander@doj.ca.gov<br>Elaine.Meckenstock@doj.ca.gov | *Attorneys for Defendant* |

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San Francisco, California, on November 25, 2013.

JARED M. GALANIS